# CHARLESTON.

Marie Attelli, *Administratrix, etc.* v. D. S. Laird

(No. 6358)

Submitted February 12, 1929.   Decided February 19, 1929.

*Hubard & Bacon,* for plaintiff in error.
*Love & Love,* for defendant in error.

Lively, Judge:

This is an action by Marie Attelli, administratrix of the estate of Pietro Attelli, deceased, to recover for Attelli's death

caused by the alleged negligent operation of a taxi-cab by S. C. Abbott, a driver for the defendant, D. S. Laird. A verdict of $2,000.00 was returned and judgment entered thereon. This writ followed.

On March 30, 1926, about 6:30 o'clock A. M., Attelli, a foreman for the Kanawha and Hocking Coal Company at Cannelton, drove up on the Midland Trail in a coal company truck carrying its employees to their work, and stopped at a point opposite the company club house at Longacre to receive the day's orders. The truck had been pulled over to the right of the paved highway leaving about three feet thereof still on the road. Attelli got out of the driver's seat on the right-hand side, went around to the rear of the truck, and attempted to cross over to the club house, but was struck just before he reached the other side of the paved road, by the right fender of the defendant's automobile, and was carried 64 feet (according to plaintiff's evidence). Defendant's car was then stopped and the injured man was picked up 14 feet from the rear of the automobile, thus making it 78 feet from the point where he was struck to where the car was brought to a stop. The defendant's witnesses testified that Attelli was carried 37 feet after being struck. It was a clear day, and the road was dry. There was no skid marks evidencing a quick application of the brakes by Abbott. The evidence further shows that it was 25 feet from the point where Abbott attempted to avoid hitting the deceased by turning his car to the right, to where the deceased was struck.

The defendant's evidence is to the effect that Abbott was going at a speed of from 15 to 20 miles an hour; that he did not perceive the deceased in the road until he got within about 20 feet of him, when Attelli suddenly appeared from the rear of the truck; that Abbott applied his brakes and turned his car to the right to avoid hitting the deceased, but that the latter hesitated and then ran directly into the path of the on-coming car; that the deceased did not look down the road in the direction of Abbott's car, until it was a few feet from him. The evidence of the plaintiff is to the effect that when Attelli stepped out from the rear of the truck in which he had been riding, Abbott's car was 200 feet away on a

straight stretch of road; that Attelli had gotten midway of the highway, the paved portion of which·was about 14 feet wide at that point, with a dirt shoulder on each side thereof, when he became aware of the nearness of Abbott's car, that he half hesitated for a moment, and then continued on his way across the road, and was just about to step off the paved portion of the highway when he was struck by the right fender of the defendant's car; that defendant's automobile was running from 30 to 35 miles per hour when the accident occurred. One of the plaintiff's witnesses testified that Attelli looked both up and down the road. The other witnesses for the plaintiff, and also those for the defendant, were unable to say whether the decedent looked down the road in the direction of Abbott's car. Abbott gave no warning of his approach, nor did he slow down as he approached the deceased's truck. Abbott had passed another coal company truck about 300 feet from the point where the accident occurred, which had stopped to permit workmen to board it. He knew the purpose for which these trucks were used, having sometime previous thereto been an employee of the coal company.

The errors assigned are in the giving and refusing of instructions; in the refusal to set aside the verdict because contrary to the law and evidence; and in the introduction of evidence.

Plaintiff's instruction No. 1, given, defined an urban highway within the meaning of the statute, and told the jury that if they believed the accident had occurred on such a highway, and that Abbott had exceeded the fifteen mile speed limit prescribed therefor, they could consider this fact together with the other facts and circumstances in the case in determining whether he had exercised due and reasonable care in the operation of defendant's automobile. There was evidence which would warrant the jury in finding this was an urban highway; and the extent to which a violation of the urban speed limit could be considered was correctly stated by the court. This instruction was properly given.

Defendant also alleges as error the giving of plaintiff's instructions Nos. 2 and 3, to the effect that if Abbott could

by the exercise of reasonable care have seen the deceased in time to have avoided the accident, and by the exercise of ordinary care could have prevented the same, the deceased not being guilty of contributory negligence, the jury should find for the plaintiff. It is contended that all of the witnesses in the case stated that Abbott could not see the deceased until he came from behind the truck and that defendant's automobile was then 15 to 20 feet from the deceased, and was 9 to 12 feet from him when he hesitated in the road and ran in front of it. Plaintiff introduced evidence tending to show that when Abbott was 200 feet away from the rear of the truck, he was in a position to see Attelli as he started across the road, and that Abbott was at least 25 feet away from the deceased when he turned his car to the right in order to avoid striking him; that if Abbott was travelling at from 15 to 20 miles an hour, as claimed by him, he could have stopped his car within 14 feet, and thus avoided hitting the deceased. There was sufficient evidence upon which to base these instructions.

Plaintiff's instruction No. 9, given, told the jury that even though they may have believed that Attelli contributed to his injury by crossing the road when the car driven by Abbott was approaching, still if they believed the injuries which caused Attelli's death were inflicted after he had been knocked down and was under the wheels and machinery of the car, and that Abbott could by the exercise of reasonable care have stopped it after striking the deceased and thereby prevented the infliction of injuries causing his death, they should find for the defendant. There was evidence to warrant the giving of this instruction as will be shown, *infra*, in consideration of plaintiff's instruction No. 11.

Plaintiff's instruction No. 11, given, was based on the doctrine of last clear chance. It is argued that the doctrine of last clear chance has no application to this case. Granting that the deceased was negligent in attempting to cross before determining whether cars were coming from down the road, yet there was evidence to sustain the plaintiff's theory that Abbott had the last clear chance to have avoided the accident. He knew that the truck was used in hauling the

coal company's employees to their work. And not very far down the road he had passed a similar truck with miners getting aboard it. He was then in a position to see the second truck which had stopped about 300 feet away, and from which he could reasonably expect some one to alight, yet he continued to maintain the same rate of speed (20 miles per hour, according to him, 35 miles an hour according to plaintiff), from the time he passed the first truck until he reached the point of the accident, and gave no warning of his approach (although he claimed that a crushed muffler caused his car to make more than the usual noise). Twenty-five feet from where he struck the deceased (who had been in his line of vision for at least 175 feet), he turned his car to the right to avoid hitting him.. If he was running 20 miles an hour, the evidence shows he could have stopped the car within 14 feet, and thus avoided striking the deceased, even though the latter evidently frightened by the predicament in which he found himself in the middle of the road, attempted to cross in front of the car. Furthermore, the evidence discloses that the deceased was carried 64 feet after he was hit, and that the car was not stopped until it had travelled 14 feet beyond the point where the deceased was picked up. The attending physician, Dr. McIntosh, was of the opinion that the injuries sustained by the deceased were the result of his having been rolled under the machine. Under this evidence it was for the jury to say whether the defendant had the last clear chance of avoiding the accident, and consequently it was not error to give this instruction. *Hamblin* v. *Schultis,* 220 Pac. (Cal.), 320; *Truman* v. *Products Company,* 96 W. Va. 256; *Deputy* v. *Kimmell,* 73 W. Va. 595.

Defendant's instruction No. 2, refused, would have told the jury that if they believed the deceased started across the road at the place of the accident and saw the automobile driven by Abbott approaching and attempted to cross the road immediately in front of the machine and was struck as the driver turned the car to his right in order to avoid striking the deceased, that such conduct on his part constituted contributory negligence preventing recovery by the plaintiff. The instruction as framed did not include the plaintiff's theory

that Abbott had the last clear chance of preventing the accident by the exercise of reasonable care. This instruction was properly refused. Defendant's instruction No. 3, contained the same vice and was likewise properly refused.

Defendant's instruction No. 15, refused, would have told the jury that if the accident occurred on a public highway or a portion thereof, more than one-fourth mile in length, along either side of which the buildings were more than 300 feet apart, then such a vicinity would not be urban in character. Under this instruction no matter how thickly populated the highway along one side of the road may have been, if on the other side the houses averaged more than 300 feet apart for a fourth of a mile in length from the place of the accident, the speed limit would be 35 miles an hour. We do not believe this is the law. The statute is applicable where either side is so settled as to bring it within the terms thereof.

As we have indicated, the case was one involving the doctrine of last clear chance, for the reason hereinbefore stated, and there was sufficient evidence to sustain a verdict based thereon. The court did not err in refusing to set aside the verdict as contrary to the law and evidence.

The defendant complains of the introduction of certain evidence objected to by him. It is contended that it was error to permit H. G. Wendell, an automobile mechanic, to testify that defendant's make and model of automobile could be stopped in a certain distance, because there is a distinction between a test stop and an emergency stop; and furthermore, the defendant's driver not being an expert, he was not required to exercise an expert's judgment. The difference in the nature of the stop to be made,—whether test or emergency, —as pointed out by the defendant, is, of course, apparent, but every driver of an automobile must be prepared to act with reasonable care in any emergency. It was permissible, in determining whether Abbott in stopping his machine exercised the degree of care demanded by the situation, to show the distance in which a car of that model and make could be stopped while running at a given rate of speed. Vol. 2, Blashfields' Cyclopedia of Automobile Law, section 79, page 1704. As to the claim that Abbott was not an expert, it will be noted that he had driven a car for over 15 years, and a taxi for about two.

It is further alleged that the court erred in permitting Dr. McIntosh to testify that in his opinion the injuries which resulted in the death of the deceased were caused by his being rolled under the machine. It is contended that the doctor not having seen the accident, knew nothing about the circumstances. Dr. McIntosh did not see the accident, but on various occasions he had had opportunities to examine persons who had come to their death by being crushed, and rolled, and it was his opinion, based upon an examination of the deceased made two or three minutes after the accident, that the fatal injuries sustained by the deceased were caused by his being rolled under the car. He stated that the bones of the chest wall had been ground into small particles, a condition which was not likely to occur from crushing alone. In Vol. 3, Jones on Evidence (2nd ed.), section 1346, pages 2460-61-62, it is said: "Probably the majority of medical experts who are called for the purpose of rendering an opinion as to causation have either attended or examined the person respecting whom their opinion is sought, and there seems to be no question, generally speaking, but that an opinion as to the cause of death, or of a particular physical condition based on knowledge so acquired is admissible in evidence."

It is further urged that the court should not have permitted S. C. Abbott to testify that he was a taxi-driver. It is contended that as the law requires the operators of taxi-cabs to give a policy of liability insurance, this testimony informed the jury that an insurance company would be responsible if there was any liability on defendant. In proving his agency, plaintiff asked Abbott for whom he was working at the date of the accident. The witness replied the Ideal Taxi Company. Further questioning elicited the information that the defendant was running the Ideal Taxi-cab Company. We are unable to see that the defendant was prejudiced by the introduction of this evidence.

The judgment of the lower court will be affirmed.

*Affirmed.*