MAUDE JACOBSON, *Admx., etc.* v. C. A. HAMILL

(No. 8752)

Submitted September 27, 1938.   Decided October 18, 1938.

*Goodykoontz & Slaven,* for plaintiff in error.
*James Damron, Jess Hammock* and *Hogg & Crawford,* for defendant in error.

KENNA, JUDGE:

This is an action for death by wrongful act brought in the Circuit Court of Mingo County by Maude Jacobson, administratrix of the estate of H. M. Jacobson, deceased, against C. A. Hamill. Upon a verdict of $5,000.00 in favor of the plaintiff judgment was entered on October 27, 1937. This writ of error was granted upon application of the defendant below. A former trial resulted in a hung jury and is, to a degree, accountable for the allegedly conflicting statements disclosed by this record.

Plaintiff in error relies for reversal upon but one point: That the plaintiff's decedent was guilty of contributory negligence and that the doctrine of last clear chance was inapplicable, and, therefore, that plaintiff's instruction number six constitutes reversible error. There is no objection to the language of plaintiff's instruction number six, so it may be assumed that it is in the usual form of approved instructions and the giving of it was not error if the evidence warrants an instruction upon the doctrine of last clear chance. The specific objections which the defendant below urged to the giving of this instruction are as follows: "Objected to because it is in conflict with undisputed testimony. It is inapplicable to the evidence. It ignores the surrounding circumstances of rain, mist, darkness, blinding lights, approaching car, etc. Not applicable to the facts of this case." Conceding that these objections sufficiently raise the question that it was error for the trial court to instruct the jury upon the doctrine of last clear chance, and, furthermore, that this Court must accept the verdict as having determined every controverted question of fact in favor of the plaintiff below, we think it becomes necessary to mention only such matters of fact as we believe the evidence justified the jury's finding in favor of the plaintiff below. Whether these sustain a recovery and warranted the court in giving plaintiff's instruction number six are questions to be separately answered.

There were no special interrogatories propounded to the jury.

On the evening of December 1, 1936, at approximately nine-thirty, Dr. Jacobson had left the apartment in Williamson where he resided with Mrs. Jacobson and had walked to the corner of an alley entering Harvey Street from the east. On the north side of the alley (Harvey Street running directly north and south) he paused and then started diagonally across Harvey Street to the south corner of the post office driveway, which, facing directly across Harvey Street, was at an angle of approximately forty-five degrees. The defendant's car was approaching from the north on Harvey Street, which was also West Virginia Route No. 119. It is not clear from the evidence at what point defendant's car was at the time Dr. Jacobson started across Harvey Street, but it passed the traffic light at Third Avenue and was going at a speed variously estimated at from twenty to thirty-five miles an hour. The jury was justified in finding that it was exceeding the statutory speed limit. Some witnesses testified that the defendant admitted he was trying to go through the traffic light on Third Avenue and also the traffic light on Second Avenue, a distance of approximately 260 feet and past the point where Dr. Jacobson was crossing Harvey Street, before the lights turned red, they being adjusted in a manner which caused them to change color at the same moment. In the direction that defendant's car was going, Harvey Street was upgrade five and six-tenths per cent.

The defendant's car struck Dr. Jacobson after he had come to a point where he was about to step up onto the curb at the west side of Harvey Street. It knocked him a distance of six or eight feet and he was picked up within two or three feet of the west curb. He suffered a compound fracture of the left leg just above the ankle, was taken to the hospital by way of his home, where Mrs. Jacobson and a woman friend of hers were picked up, and he died on the 7th day of December from a coronary embolism. There is no dispute as to the cause of his death, nor is there medical testimony other than the plaintiff's.

There is a great deal of testimony concerning statements made by both plaintiff's decedent and the defendant. One witness testified that Dr. Jacobson, in answer to a query from Mrs. Jacobson, stated that when he stepped off the curb he *must have been* (not that he, in fact, was) looking toward the policeman on the corner and that he didn't see the car which struck him. If the testimony of this witness was given entire credence by the jury, it necessarily follows that their attitude was not the same toward the testimony of the defendant himself. Later in the trial, the defendant stated: " * * * I saw Mr. Jacobson in front of my car with his hands up like this as if to ward off the car * * * ." With the testimony of the defendant in such conflict and with him testifying that he found out *after* the accident that it was not necessary to speed a car in order to "make" the two traffic lights before they changed color, that he may have been speeding to "make" both lights when the accident occurred, and that he merely "judges" that he was not exceeding the statutory speed limit of twenty miles per hour, it is not difficult to believe that the jury accorded superior weight to the testimony offered by the plaintiff.

Mrs. Jacobson stated that on the way to the hospital Dr. Jacobson asked Hamill why he ran into the curb when he had the whole street, and the defendant replied that he did not know but that his windshield was a little dirty and a light was bothering him.

The witness Phillips, who estimated that at the time of the accident defendant was traveling thirty or thirty-five miles an hour, states that he, at the scene of the accident immediately after it occurred, told defendant he was driving too fast and defendant admitted that was true and stated that he was trying to "make" both lights before they changed color. Hamill had repeatedly driven through the same block on Harvey Street.

Both Mrs. Jacobson and Phillips are contradicted, at least inferentially, as are most of plaintiff's witnesses, but we think the jury would have been justified in finding

that defendant was driving his car between two traffic lights in an effort to "make" the second light before it changed to red and up a grade of five and six-tenths per cent at a speed of thirty-five miles per hour in violation of the statute; that it had been raining and that both a dirty windshield and a rather heavy mist, as well as oncoming traffic, obstructed defendant's vision and increased the care required of him for the safety of others; that defendant became aware of the danger in which plaintiff's decedent's negligence had placed him and of the fact that he would not extricate himself from his position of peril in time to avoid the impact. Furthermore, should the jury have taken cognizance of the ordinary experience of mankind it could have found Dr. Jacobson not guilty of contributory negligence. No witness states that, after leaving the curb and before reaching the middle of the street, Dr. Jacobson did not glance to the right to ascertain if there was southbound oncoming traffic. He may have misjudged the time he had to cross in front of defendant under the mistaken belief that defendant was not exceeding the lawful speed limit; or the light glare, coupled with the mist on a dark night, may have caused him to misjudge the distance defendant had to travel before reaching the point where he would cross in front of defendant's car.

The decision of this case rests upon an analysis of the plaintiff's testimony and it could be discussed in much greater detail. However, we are of opinion that the trial court should not be reversed for overruling the motion to set aside the verdict and entering judgment for plaintiff for the reason that the evidence justifies a finding by the jury either that plaintiff's decedent was not shown guilty of contributory negligence, the burden of which, of course, rests upon defendant, or, if so, that defendant became aware of the position of peril of plaintiff's decedent and of the fact that he was unable to extricate himself therefrom in time, by the exercise of reasonable care, to have avoided injuring him. In either case, the judgment should stand.  .  *Affirmed.*

RILEY, JUDGE, dissenting:

With regret I dissent from the majority opinion in this case. The record discloses that decedent, at the time struck, was walking across Harvey Street from the east to the west side in a southwesterly direction at an angle of about forty-five degrees. Walking at this angle, necessarily his back was partly toward southbound traffic, and his opportunity to see defendant's car coming from the north was greatly diminished. Thus his failure to see the oncoming car was the result of his own contributory negligence. There was, as Judge Kenna suggests in the majority opinion, sufficient evidence to justify the jury in finding that defendant was exceeding the statutory speed limit. The weather was misty and dark. Defendant testified, without contradiction, that he did not see the decedent until he was within two or three feet from the front of the car. That being so, there was not sufficient time to avert the collision. It follows that the last clear chance doctrine has no application, and this case is simply one of concurrent negligence in which there should be no recovery. *Meyn* v. *Dulaney-Miller Auto Co.*, 118 W. Va. 545, 191 S. E. 558.

JUDGE FOX joins in this dissent.

KENNA, JUDGE, replying:

The testimony of the defendant, which is referred to in Judge Riley's dissenting memorandum, concerning the distance that decedent was in front of defendant's car at the time defendant first saw him is by no means as explicit, as I read it, as it appears to be to Judge Riley. On defendant's direct examination (Record 126) the following questions and answers appear:

"Q. Mr. Hamill, how close was the front end of your car to Mr. Jacobson when you first saw Mr. Jacobson in front of it?

A. Just a few feet, right in front of the car.

Q. Suppose you give us the best estimate in feet that you can?

A. Well, I would say two or three feet."

The uncertainty of this estimate, to my mind, is apparent. A contradictory inference certainly could be drawn from the following testimony. The disinterested witness, Kemper B. Hylton, on direct examination, was asked the following questions and made the following answers:

"Q. Kemper, did you see any part of it?

A. Well, I guess I seen all of it.

Q. What was the first thing that attracted your attention?

A. The sliding of wheels on the street.

Q. The noise you mean?

A. Yes.

Q. Were you looking in that direction up to that time?

A. No, I had my back to them or maybe my side. I wasn't turned that way.

Q. When you heard the noise did you look around?

A. I did.

Q. And did you see the car before Mr. Jacobson was struck?

A. Yes, I did.

Q. About how close was it to him when you looked around and first saw the car?

A. Well, it looked to be around two or three feet of him." (Record, p. 65)

To my mind, the testimony of this witness that *after* his attention was drawn by the sliding of wheels and *after* that caused him to look around, Hamill's car was within two or three feet of Jacobson is certainly not in agreement with the rather reluctant statement of the defendant Hamill. The record shows other circumstances giving rise to variances of the estimated distance Hamill's car was from the decedent when he was first observed by defendant.