DAISY STAMPER, ADMINISTRATRIX OF THE ESTATE OF
PRESTON PARK STAMPER

*v.*

LILLIAN DEREMO BANNISTER

(No. 12021)

Submitted January 17, 1961. Decided February 14, 1961.

*William F. Carroll, E. Franklin Pauley, Thomas E. Myles,* for plaintiff in error.

*Mahan, White, Higgins & Graney,* for defendant in error.

BERRY, JUDGE:

The plaintiff, Daisy Stamper, Administratrix of the Estate of Preston Park Stamper, deceased, instituted an action for the wrongful death of her husband, hereinafter referred to as plaintiff's decedent, against the defendant, Lillian Deremo Bannister, in the Circuit Court of Fayette County, and at the conclusion of plaintiff's evidence in the trial of the case in said Court, a verdict was directed in favor of defendant and judgment entered on the verdict on August 17, 1959. Upon application to this Court, a writ of error and supersedeas was granted to said judgment on March 1, 1960.

The action arose out of an automobile accident which occurred on U. S. Route 60 in Kanawha County, West Virginia, near the Town of Malden on May 6, 1958. The plaintiff's decedent resided in the George's Creek community which is near Malden, but on the opposite side of U. S. Route 60.

On the day of the accident, plaintiff's decedent left his home on George's Creek around 7:30 a.m. to go to Malden to get the mail. In order to get to the post office in Malden it was necessary for him to cross U. S. Route 60. There was an underpass with a sidewalk near the scene of the accident, and also a well worn path which crossed over the highway which was used by persons going to and from George's Creek and Malden. It was apparently more convenient to use the path going over the highway than to use the underpass; consequently, the path was frequently used by persons going to and from Malden and George's Creek. The highway, U. S. Route 60, on which this accident occurred, is heavily traveled. It is a four lane highway, with two lanes for westbound traffic going toward

Charleston and two lanes for eastbound traffic traveling toward the Town of Belle. There is a 4 foot island between these two lanes.

At the time the accident occurred, about 7:45 a.m. on May 6, 1958, the defendant was driving her automobile in the westbound traffic lane in the direction of Charleston, and was followed by cars driven by two witnesses who were also proceeding toward Charleston. There was a mist or haze at this time, although it was not raining and the highway was not wet.

The underpass at Malden and the Malden intersection into Route 60 are near the point where the path, upon which the plaintiff's decedent was walking, entered the highway. From this point to the top of a hill, in an easterly direction from the intersection and path, is a distance of about 800 feet, with an unobscured view, and there is a double white line marked on the highway between the two lanes for westbound traffic. Not only was there a clear view down the highway from the top of the hill to the place of the accident, but a person traveling on the highway toward Charleston in a westerly direction could see for several feet off to the right of the highway at the intersection and to where the path approached the highway. None of the plaintiff's witnesses testified that they saw the plaintiff's decedent enter the highway. The defendant did not testify in this case. The plaintiff's witnesses were driving automobiles behind the defendant's car, and, of course, did not have the clear view ahead that defendant had. According to plaintiff's witnesses the defendant was driving about 40 miles per hour at the time of the accident and was not exceeding the speed limit. These witnesses testified that the defendant drove her automobile gradually to the left about 100 feet from the point of impact and crossed over the double white lines and into the westbound passing lane, striking the plaintiff's decedent when he was about in the middle of the inside passing lane. The defendant's brake lights were noticed by the witnesses following when she was crossing

over the double white lines; and for a split second before the plaintiff's decedent was struck, he was observed facing defendant's vehicle in the center of the left hand, or inside, lane. The westbound traffic lanes were about 25 feet in width from the island to the berm and the eastbound traffic lanes were about 22 feet in width from the island at the place where the accident occurred. When plaintiff's decedent was struck he was thrown up in the air across the 4 foot island and into the middle of the eastbound traffic lanes, or for a distance of approximately 20 feet. He received serious injuries and died as a result thereof two days after the accident.

Plaintiff's decedent was unemployed at the time of the accident and had been for about one year. He had been crippled previously by virtue of the loss of half of his left foot. An attempt was made by the plaintiff to have the medical, hospital and funeral expenses admitted as elements of damage, but the trial court ruled that they were not admissible as such.

The plaintiff's decedent had as much right under the law to use or cross the highway as the defendant had in driving her vehicle over said highway. Their rights were equal and mutual and each should have observed the rights of the other. *Deputy v. Kimmell,* 73 W. Va. 595, 80 S. E. 919; 51 L.R.A. (N.S.) 989, Ann. Cases 1916E 656. The plaintiff's decedent, according to the record of this case, had approached and entered U. S. Route 60 from the north side, or to the defendant's right, and had walked approximately three-quarters of the way across the westbound traffic lanes of said highway to the center of the left or passing lane, when he was struck. In other words, he had walked a distance of about 19 feet into and across the westbound traffic lanes of the highway at this time. This would have required several seconds in any event, and if the defendant's automobile was traveling at a speed of 40 miles per hour, as indicated by the record, she would have been several hundred feet away from the plaintiff's decedent when he first

walked upon the highway. There was no vehicle or other obstruction in front of the defendant, and even with a mist or haze being present, she should have observed the plaintiff's decedent upon the highway several seconds before he was struck. There is no evidence that the mist or haze was heavy, but if it was and reduced the defendant's vision, she had the duty to reduce her speed accordingly. Thus, by the exercise of ordinary care, she might have been able to control her car in such a manner so as to have avoided striking plaintiff's decedent.

One of the witnesses who was traveling behind defendant's car stated that he saw her gradually drive to the left and cross the double white lines before striking the plaintiff's decedent. Had the defendant continued to drive in the right lane, or driving lane, instead of crossing the double white lines into the passing lane, the accident might have been prevented. Then, too, the plaintiff's witness testified that for a split second before the plaintiff's decedent was struck, he saw him facing the defendant's car, and if the plaintiff's decedent had been in such a position for a sufficient length of time, it may have been possible for the defendant to turn her car back to the right and for her to have avoided striking plaintiff's decedent. Even if the plaintiff's decedent was guilty of negligence by placing himself in a situation of imminent danger, if the defendant, by the exercise of reasonable care could have avoided striking him, the negligence of plaintiff's decedent would not bar recovery in this case. *Deputy v .Kimmell, supra; Smith v. Gould,* 110 W. Va. 579, 159 S. E. 53; 92 A.L.R. 28; *Meyn v. Dulaney-Miller Auto Co.,* 118 W. Va. 545, 191 S.E. 558.

The law in this state is that if the way appears clear to a pedestrian, he may proceed to cross a highway, and whether or not he is guilty of negligence in so doing is generally a question of fact for jury determination. *Ritter v. Hicks,* 102 W. Va. 541, 135 S. E. 601; 50 A.L.R. 1505; *Yuncke v. Welker,* 128 W. Va. 299, 36

S. E. 2d 410; *Skaff v. Dodd,* 130 W. Va. 540, 44 S. E. 2d 621.

It is interesting to note that an examination of cases decided by this Court involving the striking of a pedestrian upon a street or highway by a motor driven vehicle discloses that apparently it is significant to consider the position of the pedestrian upon the street or highway at the time of the accident. This was first indicated by Judge Browning in the case of *Bower v. Brannon,* 141 W. Va. 435, 90 S. E. 2d 342, wherein cases relative to this situation were collected. It was stated therein that although the place of the accident was not conclusive, it was important by reason of the decisions of this Court and other courts. Those collected cases indicated that the cases where the evidence of contributory negligence barring recovery was held a matter of law for the court were usually cases in which the pedestrian was struck at or near the edge of the street or highway from which he had started to cross to the other side, and that in the cases where the pedestrian was struck at, or beyond the center of the highway, the question of contributory negligence is a matter for jury determination. See the *Bower* case for the collected cases with regard to this matter.

Although the defendant crossed the double white lines, which, under the motor vehicle laws of this state, indicate "no passing" zones, and struck the plaintiff's decedent in the passing lane, the defendant was not attempting to pass another vehicle at the time, the situation for which the statute was intended; therefore the question of negligence on the part of the defendant for crossing the double white lines and driving her vehicle into the left lane, or passing lane, would be purely, under the facts of this case, a question for jury determination, to be considered by the jury along with the fact that it was daylight at the time of the accident, and that there were no objects to obstruct the defendant's view, and that the plaintiff's decedent was three-quarters of the way across the westbound traffic lanes when he was struck by the defendant's

automobile. *Beane v. Keyser,* 103 W. Va. 248, 137 S. E. 898; *Attelli v. Laird,* 106 W. Va. 717, 146 S. E. 882; *Liston v. Miller,* 113 W. Va. 730, 169 S. E. 398; *Walker v. Bedwinek,* 114 W. Va. 100, 170 S. E. 908; *Cline v. Christie,* 117 W. Va. 192, 184 S. E. 854; *Jacobson v. Hamill,* 120 W. Va. 491, 199 S. E. 593; *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d 410; *Bower v. Brannon,* 141 W. Va. 435, 90 S. E. 2d 342; *Walker v. Robertson,* 141 W. Va. 563, 91 S. E. 2d 468.

If the defendant failed to see the plaintiff's decedent on the highway and without justification struck him, or saw him and could have avoided striking him, she would be guilty of negligence, which would warrant recovery of damages by the plaintiff. See *Smith v. Gould,* 110 W. Va. 579, 159 S. E. 53; *Cline v. Christie,* 117 W. Va. 192, 184 S. E. 854 and *Walker v. Robertson,* 141 W. Va. 563, 91 S. E. 2d 468.

In dealing with cases similar to the one at bar, this Court said in the case of *Cline v. Christie, supra,* at page 195, that: "It is well established that the operator of a motor vehicle is bound to anticipate the presence of pedestrians on the highway and has no superior rights over them because of the character of the vehicle which he is operating. And it is incumbent upon him to maintain control of his automobile at all times, and to use reasonable care and caution under the circumstances and conditions of the particular time."

We are of the opinion, from the facts in this case and from authorities applicable thereto, that the question of negligence on the part of the defendant and the question of contributory negligence on the part of plaintiff's decedent are questions to be determined by a jury. It was therefore error for the trial court to find as a matter of law that the defendant was not guilty of negligence, or that the plaintiff's decedent was guilty of contributory negligence as a matter of law, and to direct a verdict in favor of the defendant at the conclusion of plaintiff's evidence.

Inasmuch as this case will perhaps be retried, it is deemed necessary to answer the question raised as to whether or not medical, hospital and funeral expenses are proper elements of damage in wrongful death actions.

Although some courts have held otherwise, the weight of authority in this country is that such expenses are admissible in evidence as proper elements of damage in wrongful death actions if the distributee or distributees sustain a loss as a result thereof and the amounts charged are reasonable. 25 C.J.S., Death, §108; 94 A.L.R. 441. It is true that any money received by the distributee or distributees in a wrongful death action is not subject to any debts of the deceased, but if the distributee or distributees will suffer or have sustained a loss thereby, such as where they are liable for or have paid such expenses, or where the estate is diminished by the payment of same and their distribution therefrom has been accordingly diminished, such items are admissible as elements of damage. However, the burden of proof by a preponderance of the evidence, that such loss has been, or, will be, sustained, rests upon the plaintiff. *Jutila v. Frye*, 8 F. 2d 608; *Archambeault v. Draper*, 101 F. Supp. 1004; *Killion v. Dinklage*, 236 N.W. 757; *Wilt v. Moody*, 254 S.W. 2d 15; *Boroughs v. Oliver*, 85 So. 2d 191; *Andrus v. White*, 106 So. 2d 705; *McEntyre v. Jones*, 263 P. 2d 313; *Robison v. Leigh*, 315 P. 2d 42.

It has been held in both Virginia and West Virginia that not only is such pecuniary loss admissible as an element of damage, but that grief and sorrow of the beneficiaries, as well as loss of earnings of the deceased, are proper elements of damage. *Wigal v. City of Parkersburg*, 74 W. Va. 25, 81 S. E. 554; 52 L.R.A. (N.S.) 465; *Morris v. Baltimore & Ohio Railroad Co.*, 107 W. Va. 97, 147 S. E. 547; *Matthews v. Hicks*, 197 Va. 112, 87 S. E. 2d 629.

The West Virginia case of *Wigal v. City of Parkersburg, supra,* was decided before the West Virginia

statute, Code, 55-7-6, was amended in 1955. However, the part of the statute involved in the *Wigal* case remains in the same language as it was when the *Wigal* case was decided in 1914, at which time it was held that such elements of damage were admissible in evidence in wrongful death actions under the statute, Code, 55-7-6, which reads: ''In every such action the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars.'' The amendment in 1955 provided that in cases where pecuniary loss is sustained by the distributee or distributees in an amount exceeding ten thousand dollars, and if proved by a preponderance of the evidence, the jury could give such damages for such pecuniary loss not exceeding the total of twenty thousand dollars for all damages recoverable in such actions.

It is therefore clear that, under the law pertaining to wrongful death actions in this state, and the decisions of this Court relative thereto, medical, hospital and funeral expenses are proper elements of damage in wrongful death actions, and admissible in evidence, when it is shown by such evidence that the charges are reasonable and the distributee or distributees have sustained a loss as a result thereof.

For the reasons set out herein, the judgment of the Circuit Court of Fayette County is reversed, the verdict is set aside and a new trial is awarded.

*Judgment reversed; verdict set aside; new trial awarded.*