## Staunton

C. H. DICKENSON, ADMINISTRATOR, ETC. v. JOHN PROSSER TABB, IV.

HELEN P. THARP v. JOHN PROSSER TABB, IV.

HELEN P. THARP v. BARBARA A. SMITH.

September 8, 1967.

Record Nos. 6479, 6480, 6481.

Present, All the Justices.

*A. L. Brault* (*William G. Plummer; Brault, Lewis and Plummer*, on brief), for plaintiff in error, Record No. 6479.

*J. Frederick Larrick; Joseph W. White* (*Larrick and White*, on brief), for defendants in error, Record Nos. 6479, 6480, 6481.

*J. Sloan Kuykendall* (*Kuykendall and Whiting*, on brief), for plaintiff in error, Record Nos. 6480 and 6481.

SPRATLEY, J., delivered the opinion of the court.

On December 15, 1962, Darryl Edward Dickenson and his young bride of two months drove from their home in Annandale, Virginia, to Kern Motor Company in Winchester, Virginia, to find out when they could expect the delivery of a new car purchased through John Prosser Tabb, IV, salesman for the motor company. After a short conference at the office of the motor company, Tabb left, purchased a "fifth" of whiskey, and returned. The motor company closed for business between 6:15 and 6:30 p. m. At that time, approximately seven or eight ounces of the whiskey had been consumed by the Dickensons and Tabb. It is not disclosed how much of the liquor had been consumed by any one of them.

After the motor company closed, William Harrington Smith, Jr., its sales manager, invited the Dickensons and Tabb to his apartment for a drink. Tabb and Dickenson each had two highballs at Smith's apartment between 6:30 and 8:40 p. m. The witnesses said that Dickenson's conduct and behavior at Smith's apartment were normal, and there was nothing about his appearance or conduct to suggest that his drinking had impaired his ability to drive a motor car.

Arrangements were made for Smith and his wife, Dickenson and his wife, Tabb and a friend, Beverly Rice, to go to Lone Oaks Restaurant in Waterloo, Virginia, for dinner. At the restaurant, the group of six were served a steak dinner. Dickenson had two bottles of beer and Tabb one during a period of about one hour and forty-five minutes. At the restaurant, nothing out of the ordinary was noticed about Dickenson's appearance or actions. He was not loud or boisterous. He appeared to have control of his muscular movements and there was nothing wrong with his speech.

Tabb telephoned his wife from the restaurant that he was bringing some guests, the Dickensons, to his home to spend the night. Mrs. Tabb testified he said nothing about the ability or inability of Dickenson to drive. The group left the restaurant about 10:45 p. m. in two cars to drive to Tabb's home in Middleway, West Virginia. Dickenson was the driver of the first car, a Tempest, with his wife in the front seat and Tabb in the rear seat. Smith drove the other car, a Studebaker, which was occupied by Mrs. Smith and Beverly Rice.

Traveling from Waterloo through Middleway, the parties proceeded in an easterly direction on U. S. Route 340 towards Charles Town, West Virginia. They drove through Berryville, Virginia, thence across the West Virginia line to about one mile west of Charles Town, where the accident hereinafter related occurred.

After the two cars passed through Berryville, Smith and his wife, who were driving behind Dickenson, observed Dickenson driving at times in the middle of the highway. His automobile drifted to the right of the hard surface, and on to the hard shoulder a couple of times between Berryville and Gaylord, a distance of four and one-half miles. Smith, who was driving approximately 50 to 55 miles per hour, said that Dickenson suddenly drove ahead at a rate of speed in excess of 65 miles per hour. Smith tried briefly to keep up with the Dickenson car; but slowed down when Mrs. Smith protested. He lost sight of the Dickenson car until Rippon was passed. Between Rippon and the scene of the accident, a distance of 5 miles, the Dickenson car appeared to maintain a constant speed of 50 to 55 miles per hour.

At about 11:00 p. m., Mr. and Mrs. Ripley Franklin Dellinger left Charles Town, traveling in a westerly direction on Route 340 in a Buick automobile, Dellinger driving and his wife on the front seat. They traveled about a mile and a half, when Dickenson, traveling easterly, drove his car across the center line of the highway into the westbound traffic lane of Dellinger and crashed "broadside" into Dellinger's Buick.

Route 340, at the scene of the accident, is a two-lane highway, 21 feet in width, running generally in an east-west direction. The two lanes are divided by lines in the center, one broken to permit eastbound passing, and one solid to prohibit westbound passing. East of the point of the accident, the highway is straight and practically level for a considerable distance. Immediately to the west it runs downhill and into a rather sharp curve towards the north.

As a result of the collision, the Dickenson car, the Tempest, stopped approximately in the middle of the roadway in a crosswise position, facing north and occupying both lanes. The Dellinger Buick came to rest at an angle across the center of the highway, with its left front driven into the right-hand door of the Tempest. The right door of the Tempest was caved in; but its left side did not appear to be damaged very much.

Smith came upon the scene of the accident from the west almost immediately after its occurrence, while the smoke and dust from the collision were still in the air. He stopped his Studebaker on the southern shoulder of the road beside a portion of the wreckage. He and his wife observed that the Tempest blocked both traffic lanes, and that the Buick was at an angle across the center line. Debris was scattered throughout Dellinger's lane; but there was none in Dickenson's lane.

Mr. and Mrs. Smith realizing that there had been a "very serious accident," and fearing the result of injuries to the occupants of the wrecked automobiles, sought to give and to obtain help. Smith sent Rice to Charles Town to notify the police and to secure ambulances; directed his wife to help the injured; ran about 60 feet in an easterly direction towards Charles Town; and stationed himself in the center of the highway to warn traffic. He was then clad in an unbuttoned tan topcoat with his white shirt exposed. He observed an approaching car, and "waved" his arm to cause it to stop; but it did not slow down nor stop. The observed car turned out to be a car driven by Mrs. Helen P. Tharp.

In the meantime, Mrs. Tharp, a nurse at the Charles Town General Hospital, left her work about 11:00 p. m. to go to her home in Berryville. Traveling in an Oldsmobile, she drove in a westerly direction on Route 340, and approached the wreckage of the Tempest and Buick, at a speed of about 40 to 50 miles per hour. She says she did not see Smith standing in the center of the road, waving his arms to warn her. She drove on until she collided with the wrecked Buick. She testified that Route 340, immediately east of the scene of the accident, is "a long, straight stretch with a very, very slight decline." She admitted that nothing blocked her view for a distance of at least 627 feet, or for so much of that distance as came within the range of her headlights, as she approached the scene. She observed the lights of three automobiles, which she thought were driving towards her; their lights "blinded" her and she dimmed her lights. When she

arrived at a point about 10 feet from the wrecked Buick, she realized that the cars facing her were not moving; then she swerved to her left into the eastbound lane, in an attempt to avoid the Buick; and, failing in her attempt, struck its right rear fender. She admitted that she did not slow down; did not sound her horn; did not deviate from her path; and did not apply her brakes until the moment she saw the Buick just 10 feet away.

The Buick was struck with such force that it was moved a distance of 30 to 35 feet, and came to rest across the westbound traffic lane. In its movement, it struck the Tempest and knocked that care sideways a distance of at least 30 feet to the north berm of the highway. The "swinging" left rear end of the Tempest struck and severely injured Mrs. Smith, who had stepped onto the road, in the eastbound lane, attempting to go to the aid of the injured in the first collision. Mrs. Tharp's car "caromed" off the rear of the Buick, thence to a fence on the south side of the highway, and came to rest in a field. Photographic exhibits of the three cars show that each was badly damaged.

Mr. and Mrs. Smith testified that there were no vehicles in the area of the accident, except the Tempest and the Buick, until the arrival of Mrs. Tharp. Smith said he had to leap aside from his position in the middle of the highway to escape being struck by the approaching Tharp car. He further testified that the highway was in good condition, the road dry, the night clear, although there was no moon. There was some light snow on the dirt and gravel shoulder, but none in the roadway.

No witnesses saw Tabb between the first and second collisions. No evidence was presented to show what injuries he received in the first collision. After the two collisions, he was found unconscious in Dickenson's car, and he had no memory of either collision. Mrs. Dellinger did not remember what happened after the first collision. Mr. and Mrs. Dickenson died on the night of the accident from the injuries received in the collision, and Dellinger died thirteen days later in a hospital.

After both collisions, Tabb was found to have suffered a fracture of the skull, numerous lacerations and contusions of the forehead and face, trimalleolar fracture of the right ankle, damage to the capsular ligament complex, and comminuted fractures of the left arm and right leg.

The amount of the damages awarded is not in question in either

case. The smashed condition of the wrecked cars and the multiple injuries sustained by Tabb reflect the violence of the two collisions.

The trial consumed five days and the evidence is voluminous. There were some contradictions in the evidence; but the jury resolved them in favor of the plaintiffs, Tabb and Mrs. Smith. Consequently, the facts have been summarized and stated in that light.

Tabb filed a motion for judgment against the administrator of Dickenson, the administratrix of Dellinger, and Mrs. Tharp, who will be sometimes hereinafter referred to as defendants. Mrs. Barbara A. Smith instituted action against the same defendants. In each case, defendants filed responsive pleadings in which they denied liability and charged each of the plaintiffs with contributory negligence and assumption of risk. The issues were joined, and the cases were, by agreement, consolidated for trial at the same time.

At a bench conference following opening statements by counsel for all parties, counsel for Mrs. Dellinger, administratrix, moved the court to enter judgment in her favor, because plaintiffs in their statements did not allege any negligence on the part of her decedent. After a colloquy among the court and counsel, counsel for plaintiffs moved "to dismiss this suit against Dellinger, administratrix of her husband." The court announced that it would grant the motion. The other defendants objected. The court and all parties agreed that no order would be immediately entered; but that the dismissal of Dellinger would be reflected in the final order.

While the first witness was on the stand, the court told the jury that plaintiffs had renounced their claims against Dellinger. At the conclusion of the evidence for plaintiffs, and at the conclusion of all the evidence, the court overruled defendants' motions to strike the evidence.

After receiving instructions from the court, and hearing argument of counsel, the jury returned a verdict in favor of Tabb against Dickenson's administrator, and Tharp, jointly and severally, for the sum of $20,000; and in the case of Mrs. Smith a verdict in favor of Dickenson, administrator, and against Mrs. Tharp for the sum of $3,000.

Motions of the two defendants to set aside the verdicts, and to enter judgment in their favor, notwithstanding the verdicts, were continued to a later date. Subsequently, each defendant filed a plea of release and *res judicata* on the ground that the dismissal of Dellinger as a defendant released all others jointly liable for the same wrong or injury. It appeared that an order was prepared, and en-

dorsed by plaintiffs, dismissing Dellinger "with prejudice," but it was never entered. Plaintiffs moved to withdraw their endorsement of the order on the ground that their motion was to dismiss Dellinger "without prejudice." The court, in the exercise of its discretion, thereupon entered an order dismissing "without prejudice," the administratrix of Dellinger. The pleas of release and *res judicata* were denied.

The court overruled and denied the motions to set aside the verdicts and entered judgments in accordance therewith. Objections and exceptions were noted by defendants. Writs of error were granted the administrator of Dickenson and Mrs. Tharp in the case of Tabb (Record Nos. 6479, 6480), and Mrs. Tharp in the case of Mrs. Smith (Record No. 6481). On appeal the three writs of error were consolidated and heard together on a single record from the court below.

Dickenson's administrator, in his assignments of error, (Record No. 6479) contends: (1) that the evidence was insufficient to justify the jury in finding that any negligence on his part was the proximate cause of the injuries sustained by Tabb; (2) that Tabb was guilty of contributory negligence and assumption of risk as a matter of law; and (3) that the court erred in refusing to sustain his plea of release and *res judicata* "in allowing plaintiff to withdraw his endorsement of the dismissal order wth prejudice;" and (4) that the court erred in giving Instruction No. 4 and in refusing Instruction No. J. At the bar of this Court, he has abandoned his assignments with reference to the two instructions.

Mrs. Tharp, in the Tabb case (Record No. 6480) relies on assignments of error similar to those of Dickenson, except as to instructions. She argues that the court erred in granting Instructions Nos. 3, 4 and E, and in refusing to give Nos. BB, CC and CC-1.

In the Smith case (Record No. 6481), Mrs. Tharp defends on the grounds that Mrs. Smith was, as a matter of law, guilty of contributory negligence and assumption of risk. She asserts that the court erred in granting Instructions Nos. 3 and E, and in permitting Mrs. Smith to withdraw her endorsement of the order dismissing Dellinger as a Defendant, and denying plea of release and *res judicata*.

As the collisions of the automobiles occurred in West Virginia, we shall consider the evidence in the light of the law of that State, where applicable here.

I — Records Nos. 6479, 6480

[1] Dickenson's administrator, as a corollary to his claim that he was free from negligence causing the injuries to Tabb, argues that those injuries were due to the intervening negligent actions of Mrs. Tharp, which he could not have reasonably foreseen. In addition, he claims that the circumstances of the two collisions did not present a case for the application of the single indivisible injury rule.

The uncontradicted evidence clearly shows that Dickenson was guilty of negligence, which was the cause of the first collision. Tabb was riding in the rear seat of Dickenson's car, when the latter drove his automobile from its eastbound lane across the center line of the highway into the westbound lane, and in front of the oncoming Dellinger car. All of the debris from the collision was found in Dellinger's lane of travel.

The negligence of Dickenson caused both lanes of traffic to be blocked, and this situation continued to the time of the second collision. The second collision was a naturally foreseeable consequence of the highway being blocked. Dickenson's negligence created that situation and started a chain of events from which further injury could and did occur as a proximate result. *Evans* v. *Farmer*, 148 W. Va. 142, 133 S. E. 2d 710. Cf. *Hartley* v. *Crede*, 140 W. Va. 133, 148, 82 S. E. 2d 672, 681.

The case of *Hartley* v. *Crede, supra,* 140 W. Va., upon which Dickenson's administrator relies, may be distinguished from this case on the facts. One of the specific instances of the difference is that in the Hartley case, one lane of traffic was unobstructed and entirely open to the free flow of traffic. Here, the highway was so blocked that it was reasonable to foresee danger from approaching traffic, and the consequences which ensued.

We do not think that the actions of Mrs. Tharp constituted intervening acts which "insulated" the negligence of Dickenson. An insulated intervening cause has been defined in *Lester* v. *Rose*, 147 W. Va. 575, 594, 130 S. E. 2d 80, 93, quoted with approval in *Maroulis* v. *Elliott*, 207 Va. 503, 510, 511, 151 S. E. 2d 339, 345, as follows:

"An intervening cause in order to relieve a person charged with negligence in connection with an injury must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of injury."

In *Evans* v. *Farmer, supra,* 148 W. Va., the West Virginia Court said at page 155, "An intervening cause of an injury is a negligent act or omission which constitutes a new effective cause and which, operating independently of anything else, is the proximate cause of the injury." (133 S. E. 2d at page 718).

Dickenson's negligence concurred with the negligence of Mrs. Tharp in causing the second collision. Her negligence was not "a new effective cause," which operated "independently" of his negligence. While each collision was, perhaps, sufficiently severe in itself to cause most of the injuries to Tabb, the evidence supports the jury's finding that the negligent acts of each defendant concurred in proximately causing all of the injuries sustained by Tabb.

The causation of each special injury, each bruise, each broken bone, or particular damage to Tabb could not be established mathematically. It was impossible to ascertain with certainty which part of his injuries was attributable to the negligence of Dickenson in the first collision, and which was caused by Mrs. Tharp in the second collision. As his injuries were not susceptible of apportionment between the two collisions, the trial court properly told the jury that the injuries sustained by Tabb were indivisible.

As we said in *Maroulis* v. *Elliott, supra,* 207 Va., at page 511, "* * * (W)here separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury." *Richmond Coca-Cola Bottling Works, Inc.* v. *Andrews,* 173 Va. 240, 250, 251, 3 S. E. 2d 419; *Von Roy* v. *Whitescarver,* 197 Va. 384, 393, 89 S. E. 2d 346; *Murray* v. *Smithson,* 187 Va. 759, 48 S. E. 2d 239; *Lester* v. *Rose, supra,* 147 W. Va.; *Reilley* v. *Byard,* 146 W. Va. 292, 119 S. E. 2d 650; *Wilson* v. *Edwards,* 138 W. Va. 613, 77 S. E. 2d 164.

In *Reilley* v. *Byard, supra,* 146 W. Va., at page 299, 119 S. E. 2d, at page 654, the Court quoted the following from The Law of Automobiles in Virginia and West Virginia, Volume 1, Section 18, page 53:

"Where, although concert is lacking, the separate and independent acts or negligence of several combine to produce directly a single injury, each is responsible for the entire result, even though his act or neglect alone might not have caused it."

See Anno: Motor Vehicles—Damages—Apportionment, 100 A. L. R. 2d, page 50.

The court did not err in granting Instruction No. 4, which told the jury that if "negligences of two persons concur in proximately causing a single indivisible injury, then such persons are jointly and severally liable for the entire damage sustained, although there was no common duty, common design, or concert of action, and the jury in case of such finding may not apportion damages as between such persons," and that "In order for the negligence of two parties to concur with each other as a proximate cause it is not necessary that they occur simultaneously, but the question of whether there is such concurring negligence is for the jury to decide."

[2]  Although the evidence shows that Tabb knew Dickenson had consumed intoxicating beverages, there was nothing to show that Dickenson's drinking had been to an extent likely to affect the manner of his driving. Mr. and Mrs. Smith and Mrs. Charles R. Miller, the owner and operator of Lone Oaks Restaurant, testified that Dickenson's behavior at the Smith apartment and later at the restaurant was normal. He was not loud or boisterous; nothing appeared to be wrong with his speech or with his walk; and there was no indication that he was under the influence of intoxicants. Not until after the group had left the restaurant, and Dickenson had driven past Berryville did Smith and his wife observe that he was driving for a short distance in an improper manner. However, they observed no irregularity in his driving for a distance of about five miles prior to reaching the scene of the accident. Since Mr. and Mrs. Dickenson were killed and Tabb had no recollection of the events on the day of the accident, no evidence was available to explain the driving of Dickenson beyond Berryville and his sudden burst of speed.

The fact that a host has been drinking and his guest has knowledge of that fact is not sufficient to establish contributory negligence as a matter of law. The evidence must go beyond this and show that because of his drinking the driver's ability to drive was impaired, and that the guest knew, or, in the exercise of ordinary care, should have known this and yet entered, or continued to voluntarily ride in the car. Whether Tabb knew, or should have known, that drinking had impaired the ability of Dickenson to drive was a question for the jury. *Meade, Adm'r* v. *Meade, Adm'r*, 206 Va. 823, 827, 147 S. E. 2d 171, 174; *Yorke* v. *Maynard*, 173 Va. 183, 188, 3 S. E. 2d 366, 369; 8 Am. Jur., 2d, Automobiles, §§ 537, 538, pages 94-96.

In *Spurlin* v. *Nardo*, 145 W. Va. 408, 114 S. E. 2d 913, the West

Virginia Court recognized the same distinction between contributory negligence and assumption of risk as that adopted in Virginia. *Arrington, Adm'r v. Graham, Adm'r*, 203 Va. 310, 124 S. E. 2d 199; *Hunn v. Windsor Hotel Company*, 119 W. Va. 215, 217, 218, 193 S. E. 57, 58; *Tiller v. N. & W. Ry. Co.*, 190 Va. 605, 612, 58 S. E. 2d 45, 48. In both states it has been held that:

"The essence of contributory negligence is carelessness; of assumption of risk, venturousness. * * * (A)ssumption of risk embraces a mental state of willingness, while contributory negligence is a matter of conduct," with knowledge and appreciation of the danger. *Arrington, Adm'r v. Graham, Adm'r, supra*, 203 Va., at page 314.

There is no evidence that Tabb voluntarily exposed himself to any known hazard, with full knowledge and appreciation of its existence. Whether he carelessly placed himself in a dangerous position was a jury question.

[3] The trial court did not abuse its discretion in permitting plaintiffs to withdraw their endorsement of the unentered order dismissing Dellinger's administratrix "with prejudice," and then entering an order dismissing her "without prejudice." No reason appears from the transcript of the evidence as to why the dismissal was intended to be "with prejudice." There was no evidence that Dellinger was guilty of any negligence. Plaintiffs' final motion was simply to "dismiss the suit against Dellinger"—not to dismiss it "with prejudice."

Dismissing or releasing a claim against one tort-feasor does not operate as a release of other joint tort-feasors unless there has been a satisfaction. It is the acceptance of satisfaction which operates to extinguish plaintiff's cause of action against other joint tort-feasors. *First, etc., Bank v. Bank of Waverly*, 170 Va. 496, 503, 197 S. E. 462; *Key v. Caldwell*, 39 Cal. App. 2d 698, 702, 104 P. 2d 87, 89.

In *Shortt v. Hudson Supply, etc., Co.*, 191 Va. 306, 313, 60 S. E. 2d 900, quoting with approval from Cooley on Torts, 4th Ed., Vol. 1, sec. 83, page 263, we said:

"* * * (W)here the bar accrues in favor of some of the wrong-doers by reason of what has been received from or done in respect to one or more others, * * * the bar arises not from any particular form that the proceeding assumes, but from the fact that the injured party has actually received satisfaction, or what in law is deemed the equivalent."

We find no merit in the objections of Mrs. Tharp to the granting and refusing of certain instructions.

Instruction No. 3 merely stated well recognized duties of an operator of an automobile.

Instruction No. 4, which we have hereinbefore referred to, sets out the "indivisible injury" rule, and applies it to the facts of this case.

Instruction No. E is based on the Code of West Virginia, § 1721 (333) (now § 17C-6-1), which read in pertinent part as follows:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards, then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care.

\* \* \* \* \* \* \* \* \* \* \*

"(c) The driver of every vehicle shall, consistent with the requirements of subsection (a), drive at an appropriate reduced speed \* \* \* when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

[4]   Mrs. Tharp testified that she was blinded by the lights of cars headed towards her as she approached the scene of the first collision. Traveling at 45 to 50 miles per hour, she did not remove her foot from the accelerator, nor apply her brakes until she was within 10 feet of the Dellinger vehicle.

In *Wolfe* v. *Beatty Motor Express*, 143 W. Va. 238, 246, 101 S. E. 2d 81, 86, where the facts were similar to those in this case, insofar as they concern Mrs. Tharp, the Court quoted with approval the following statement from *Darling* v. *Browning*, 120 W. Va. 666, 668, 669, 200 S. E. 737, 738:

"It is an accepted mandate of law that, in the exercise of reasonable care, a motorist, temporarily blinded by the lights of an approaching vehicle, must exercise caution commensurate with the situation in order to avoid injury to the person or property of others. \* \* \*."

To the same effect see *Stamper* v. *Bannister, infra,* 146 W. Va. 100.

Instructions BB and CC are in conflict with Instruction No. 4, in that they would impose upon Tabb the burden of proving what specific part of his injuries was caused by the first collision and what part was caused by the second. In that event, Tabb would have been unable to recover from either Dickenson or Mrs. Tharp.

Instruction No. CC-1 was given as No. CC-2, with minor changes, which cautioned the jury against inferring negligence of Mrs. Tharp from the fact that the second collision occurred.

## II. — Record No. 6481.

This brings us to a consideration of Mrs. Smith's action against Mrs. Tharp.

In view of our determination that the court did not err in the granting and refusing of instructions, nor in dismissing the pleas of release and *res judicata*, and having reached the conclusion that Mrs. Tharp was guilty of negligence, we need only consider whether Mrs. Smith was guilty of contributory negligence and assumption of risk.

[5] Mrs. Smith testified, without contradiction, that just before the second collision, she had alighted from her husband's car, and was standing alone on the south shoulder of the road, facing the wreckage of the first collision; that desiring to go to the aid of the injured in that collision, she made preparations to cross the road; that knowing her husband had gone down the road to her right to warn traffic approaching from the east, she looked to the left, that is towards the west; saw no car approaching in the eastbound lane; then stepped on to the eastbound lane; and before she could cross the road, Mrs. Tharp, approaching in the westbound lane, struck the wrecked Buick, causing it to strike the Tempest and the rear end of the Tempest to strike her. She expressed it in this way:

"I remember we hadn't seen any cars at all behind us. Then I thought, well, if a car does come up from that direction, they are going to see this accident, but they are not going to see me standing over here on the side of the road. So I finally got myself all gathered together for what I might see over there, and so I said, well, here I go, and next thing I heard, horrible noise, and I felt myself being hurt."

In going to the aid of the injured persons, Mrs. Smith did not voluntarily expose herself to the danger of Mrs. Tharp's negligence. Failing to see any approaching car, she was not indifferent to the hazards of the road. She was not guilty of assumption of risk, and whether she was guilty of contributory negligence, under the circumstances of the case, was correctly left to the jury.

In *Stamper* v. *Bannister*, 146 W. Va. 100, 104, 118 S. E. 2d 313, 316, this is said:

"The law in this state is that if the way appears clear to a pedestrian, he may proceed to cross a highway, and whether or not he is guilty of negligence in so doing is generally a question of fact for jury determination." (Citing cases.)

In *Deputy* v. *Kimmell*, 73 W. Va. 595, 596, 80 S. E. 919, 920, dealing with the reciprocal rights and duties of pedestrians and drivers

of automobiles this is said in Point 7 of the syllabus of the Court:

"A person lawfully in a public highway may rely upon the exercise of reasonable care by drivers of vehicles to avoid injury. Failure to anticipate omission of such care does not render him negligent. A pedestrian is not bound, as a matter of law, to be continuously looking or listening to ascertain if automobiles or other vehicles are approaching, under penalty that if he fails to do so and is injured his own negligence will defeat recovery of damages sustained."

Cf. *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601.

## III.

In conclusion, we are of opinion that the evidence was sufficient to justify the jury in finding that Dickenson and Mrs. Tharp were each guilty of negligence, and that their successive negligent acts were, in combination, the direct and proximate cause of Tabb's injuries. We also hold that the evidence was sufficient to justify the jury in finding that Mrs. Smith was neither guilty of contributory negligence, nor of assuming the risk.

The judgments complained of are, therefore, affirmed.

*Affirmed.*