# 𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡

HORTENSE B. CORBETT v. DR. J. CAMPBELL CLARKE.

March 1, 1948.

Record No. 3291.

Present, All the Justices.

The opinion states the case.

*Edward S. Ferebee* and *William H. Sands,* for the plaintiff in error.

*Leigh D. Williams* and *Williams, Cocke & Tunstall,* for the defendant in error.

Hudgins, C. J., delivered the opinion of the court.

On November 12, 1946, plaintiff instituted this action against Dr. J. Campbell Clarke for malpractice in treating and extracting her teeth. To the notice of motion, defendant pleaded the general issue and filed a plea of release. In the latter plea, it was alleged that plaintiff, on the 6th day of August, 1946, had instituted a prior action against the Standard United Dental Corporation and Dr. L. R. Temple for damages caused by their negligence in extracting a tooth; that on November 26, 1946, that action, upon motion of plaintiff, had been dismissed "agreed;" that on the same day plaintiff had executed a release discharging defendants (the original wrongdoers) in that action from any and all liability for claims and demands resulting from their malpractice and set forth in the notice of motion against them; that the alleged negligence of Dr. Clarke was a direct and proximate result of the negligence of the original wrongdoers; and that the release of the latter operated as a release of Dr. Clarke.

Plaintiff moved to strike the plea of release, tendered in court a plea of estoppel and a replication to defendant's plea of release, and finally asked leave to amend her notice of motion. The trial court overruled each and every one of plaintiff's motions, rejected her several pleas and entered judgment on the plea of release dismissing the action. From that judgment this writ of error was awarded.

The specific question presented is whether a dental surgeon, whose wrongful acts caused substantial injury to a patient, is liable for separate and distinct injuries flowing from the gross negligence of another dental surgeon whose professional aid the patient obtained to treat her for the first injury and otherwise. This is an open question in this jurisdiction, hence we are free to decide it uninfluenced by the doctrine of *stare decisis*.

The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury result-

ing from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury. A settlement with the original *tort feasor* operates as a release of the negligent physician. See *Thompson* v. *Fox*, 326 Pa. 209, 192 A. 107, 112 A. L. R. 550, Anno. 553; *Mier* v. *Yoho*, 114 W. Va. 248, 171 S. E. 535; *Sams* v. *Curfman*, 111 Colo. 124, 137 P. (2d) 1017; *Wells* v. *Gould*, 131 Me. 192, 160 A. 30; *Benesh* v. *Garvais* (1945), 221 Minn. 1, 20 N. W. (2d) 532; *Smith* v. *Thompson*, 210 N. C. 672, 188 S. E. 395; *Ross* v. *Erickson Const. Co.*, 89 Wash. 634, 155 P. 153; *Martin* v. *Cunningham*, 93 Wash. 517, 161 P. 355; *Hooyman* v. *Reeve*, 168 Wis. 420, 170 N. W. 282; 15 Am. Jur. 495; 41 Am. Jur. 252.

This rule is based on the theory that the aggravation of the injury by the negligent treatment of the physician is a result that might reasonably have been anticipated. This theory embraces the much discussed question of what is "proximate cause."

*McDonald* v. *Snelling*, 14 Allen (Mass.) 290, 92 Am. Dec. 768, is an old and leading case on this subject. It held that, when a person violates a duty imposed upon him by common law, it is just and reasonable to hold him liable to every person injured whose injury is the natural and probable consequence of his misconduct, if the injury is of a character likely to follow and which, under ordinary circumstances, might reasonably have been anticipated from the wrongful act. "The damage is not too remote if according to the usual experience of mankind the result was to be expected. * * * The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. So long as it affirmatively appears that the mischief is attributable to the negligence as a result which might reasonably have been foreseen as probable, the legal liability continues. * * * It may not always be easy to determine * * * whether the ensuing consequences are so far natural and probable as to impose a liability for them in damages. Cases may be put

falling very near the dividing line, and no rule can be laid down in advance which will determine all with precision. But the difficulty of applying a principle is a poor argument against its validity, unless one more satisfactory can be proposed in its stead."

This concept of "proximate cause" is recognized and applied in this jurisdiction. In *Wyatt* v. *Chesapeake, etc.,* *Tel. Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386, we said: " * * * negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be expected to happen." See *Hubbard* v. *Murray*, 173 Va. 448, 455, 3 S. E. (2d) 397.

The facts alleged in the replication and amended notice of motion reveal two separate and distinct torts. The original *tort feasors*, in extracting plaintiff's tooth, left the root in the gum and refused to give further treatment. The second tort, or series of torts, committed by defendant was not in the removal of the root of the broken tooth, but the extraction of another tooth, sewing up a foreign substance in the cavity, and the subsequent failure to find and remove the foreign substance from the wound. These subsequent negligent acts were more than the aggravation of the original injury. In the present advanced stage of medical science, it is not reasonable to anticipate that a dental surgeon will be so grossly negligent as to fail to remove absorbent cotton or other foreign substance from an opening in his patient's body before closing or sewing up the incision resulting from an operation. To so hold would strain the usual and normal concept of "proximate cause" to the breaking point.

There is a division of authority on the question, but the conclusion stated is in accord with many of the better reasoned cases.

In *Purchase* v. *Seelye*, 231 Mass. 434, 121 N. E. 413, 8 A. L. R. 503, the plaintiff sustained a rupture in his right

groin while in the employ of the Boston & Albany Railroad Company. He consulted Dr. Seelye, a surgeon, who operated upon him. The day after the operation plaintiff discovered that the surgeon had operated on his left groin. When he called this to the attention of the surgeon, he was told: "I took you for another patient of mine that had a hernia on the left side. Well, the only thing we can do is to operate on the right side in about two or three days." The second operation was performed. Plaintiff, in consideration of $205.00, executed a release to his employer and later instituted the action against the surgeon for malpractice. It was held that the operation upon plaintiff's left side was not a natural and probable result of the negligence of the railroad company. "The fact that the mistake made by the defendant might possibly occur is not enough to charge the railroad company with liability; the unskillful or improper treatment must have been legally and constructively anticipated by the original wrongdoer as a rational and probable result of the first injury. This is the true test of responsibility, and it cannot be extended to cover the facts in the present case as shown by the record."

The facts in *Parkell* v. *Fitzporter*, 301 Mo. 217, 256 S. W. 239, 29 A. L. R. 1305, were that Dr. Fitzporter, while negligently operating his automobile, struck plaintiff, broke and shattered his left leg. A part of the metal clasp from plaintiff's garter and scraps of clothing were driven into the wound. Dr. Fitzporter called in another physician and they treated the plaintiff. Later the plaintiff executed a paper releasing Dr. Fitzporter from all liability flowing from the negligent operation of the automobile. Subsequently, plaintiff sued Dr. Fitzporter and the other physician, alleging that the surgeons, in treating him for injuries, sewed the metal clasp and scraps of clothing into the wound. " * * * we find no difficulty in arriving at the conclusion that the chauffeur who carelessly runs his automobile upon another, inflicting a wound into which a metal garter buckle is driven, is guilty of a wrong independent of the wrong done by himself in the capacity of a surgeon in connection with

another surgeon in carelessly, unskillfully, and ignorantly sewing the garter buckle into the wound, and thereby inducing infection and gangrene, which in turn works permanent disability to the injured party. These two cases—that is to say, the suit for malpractice in sewing the garter buckle into the wound, and the suit for negligently producing the same wound—are founded on two separate and distinct causes of action, having no necessary legal connection whatever, and the judgment and satisfaction in the suit against the chauffeur does not bar the suit for malpractice against these two surgeons."

In *Piedmont Hospital* v. *Truitt*, 48 Ga. App. 232, 172 S. E. 237, it was held that a release given by a plaintiff to the negligent driver of an automobile did not release the hospital, to which she was taken for treatment of the injuries, for damages sustained by burns negligently inflicted upon her by a nurse at the hospital.

There are some authorities which hold the original *tort feasor* liable for the ordinary negligence of a second *tort feasor* whose act of negligence in treating the injured person aggravates the original injury but do not hold him liable if the negligence of the second and subsequent *tort feasor* is extraordinary or gross and could not have been reasonably anticipated. This distinction is noted in 2 A. L. I., Torts, sec. 457.

"If the negligent actor is liable for another's injury, he is also liable for any additional bodily harm resulting from acts done by third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.

&ast; &ast; &ast; &ast; &ast; &ast;

"d. Under the rule (quoted above) stated in this Section, the actor is only answerable for injuries which result from the risks normally recognized as inherent in the necessity of submitting to medical, surgical or hospital treatment. He is not answerable for harm caused by misconduct which is extraordinary and therefore outside of such risks." See 38 Am. Jur. (Neg., sec. 72) 729; *Welch* v. *Page*, 85 Ind. App.

301, 154 N. E. 24; *Montgomery* v. *Edelstein*, 245 App. Div. 732, 280 N. Y. S. 103.

Defendant contends that while the wrongful acts of the original wrongdoers and Dr. Clarke were separate and distinct, they produced only one result—namely, inseparable injuries to plaintiff; that she could not, and did not, state what specific injuries were inflicted by the original wrongdoers and what specific injuries were inflicted upon her by the gross negligence of Dr. Clarke; and that this series of negligent acts gave plaintiff only one cause of action, for which she has received full satisfaction as evidenced by her release.

It is true that plaintiff, in her notice of motion against the Standard United Dental Corporation and Dr. Temple, alleged that they, in breaking her tooth and refusing to treat the root left in her gum, caused substantial damages to her, which she, in general terms, alleged to be for loss of time, expenditures for medical treatment, hospital bills and permanent injury. On August 6, 1946, when her notice of motion against the original *tort feasors* was filed, she did not know that Dr. Clarke had been grossly negligent in sewing a foreign substance in her anatomy, hence at that time she was unable to distinguish between the injuries inflicted by the original wrongdoers and the injuries inflicted by Dr. Clarke. It is alleged this ignorance was due to the continued gross negligence of Dr. Clarke, who treated her on numerous occasions between June 20 and August 17, 1946, and, although he was requested to examine the cavity in which the foreign substance was confined, failed to discover the true condition of her infected gum. In plaintiff's replication and the amended notice of motion tendered, the injuries inflicted by Dr. Clarke and the damages flowing therefrom are set forth in detail, which, if proven to be true, sustain the conclusion that the damages inflicted by the several *tort feasors* are distinguishable.

The consideration stated in the release was only $225 and was said to be a consideration for the injuries inflicted upon plaintiff by the original wrongdoers. Dr. Clarke had

no connection, either contractual or otherwise, with the original *tort feasors*. It is alleged that he, and he alone, inflicted the specific injuries for which compensation is now claimed. If Dr. Clarke's contention is sustained, he will be relieved of all liability for his own separate and distinct wrongs and plaintiff will remain uncompensated for these specific injuries. Under these circumstances, the release of the original wrongdoers should not affect plaintiff's right to recover damages for specific injuries which she now alleges were inflicted upon her by the gross negligence of Dr. Clarke.

These are matters of proof. Dr. Clarke alleges in his plea of release that the injuries inflicted upon plaintiff by him are inseparable from the injuries inflicted by the original wrongdoers. These allegations are denied in the replication to the plea. Plaintiff is entitled to an opportunity to prove her allegations in the replication and in her amended notice of motion.

We do not deem it necessary to pass upon the plea of *estoppel* filed by plaintiff and rejected by the trial court, as a reversal of the case on other grounds will enable the parties to introduce evidence to support their respective allegations.

*Reversed and remanded.*