Harry W. Powell v. Charles E. Troland, Et Al.

September 1, 1971.

Record No. 7568.

Present, All the Justices.

*Stanley E. Sacks* (*Sacks, Sacks & Tavss,* on brief), for plaintiff in error.

*Harry E. McCoy* (*Seawell, McCoy, Winston & Dalton,* on brief), for defendants in error.

Harrison, J., delivered the opinion of the court.

Harry W. Powell filed his motion for judgment against Dr.

Charles E. Troland and Dr. Hyman Stromberg on January 22, 1969, alleging a cause of action for medical malpractice by defendants and seeking to recover damages for their alleged negligence and breach of warranty. Various proceedings were had in the case prior to the entry of a final judgment by the lower court sustaining defendants' motion for summary judgment and dismissing the cause.

From the pleadings and exhibits, which include a request for admission of facts and genuineness of documents by defendants, the plaintiff's response thereto, an order of the court on pre-trial conference and a certified copy of the transcript of trial proceedings had in the Law and Equity Court of the City of Richmond in the case of *Harry W. Powell* v. *Martin E. Purks,* we find the background and basis of the trial judge's final judgment and his memorandum opinion.

The plaintiff alleges that the defendants were guilty of malpractice in the performance of surgery on him on February 3, 1967 and that permanent injuries resulted.

On December 9, 1966 plaintiff was involved in an automobile accident with Martin E. Purks in Richmond. Later in the day he began suffering discomfort and consulted a physician in Tappahannock. He was hospitalized at the Tidewater Memorial Hospital there for nine days. Following his discharge and on December 21, 1966 he consulted Dr. J. F. Butterworth in Richmond and was hospitalized in that city from December 27, 1966 until January 10, 1967. Because his progress had not been satisfactory, Dr. Butterworth suggested a neurosurgical consultation. Powell requested that he be referred to Dr. Troland who had previously done surgery on him.

Plaintiff's first visit to Dr. Troland was on January 25, 1967, at which time he complained of neck pain radiating down into his left arm with weakness in the left hand. Dr. Troland diagnosed the trouble as nerve root pressure and recommended an operation which he performed on February 3, 1967. It was on this date and in the performance of the operation that Powell charges Dr. Troland was negligent. When Powell awakened in the recovery room he was found to have marked weakness of the left arm and leg and some numbness of the body. He was immediately taken back to the operating room, the surgical incision was reopened and a small hemorrhage, resting on the spinal cord, was found and removed and the incision reclosed. It was pressure on the nerve root, affecting Powell's upper extremity, which prompted the neurosurgical operation. Pressure on the spinal cord from the blood clot has caused some permanent

impairment of plaintiff's physical condition, all of which appears from the transcript of the testimony in *Powell* v. *Purks*.

On January 18, 1967 Harry W. Powell filed an action in the Law and Equity Court of the City of Richmond against Martin E. Purks to recover damages in the amount of $25,000 for the injuries he sustained arising out of the accident that occurred on December 9, 1966. In view of the verdict recovered by Powell it is obvious that plaintiff's motion for judgment was thereafter amended and the amount of damages claimed increased, following the operation by Dr. Troland. The case was heard on January 18-19, 1968 and resulted in a verdict for Powell in the amount of $40,000. The verdict of the jury was approved by the trial court and judgment entered thereon. This court denied Powell's petition for a writ of error on June 12, 1968, and on August 16, 1968 Powell marked his judgment "fully satisfied".

Examination of the record discloses that upon the trial of *Powell* v. *Purks* plaintiff called Dr. Troland as his witness and introduced the testimony of this physician, over Purks' objection, as to the surgery of February 3, 1967, including the reopening of the surgical incision and the removal of the small hemorrhage from the spinal cord. Powell introduced and claimed Dr. Troland's bill for services, and his hospital bill, as items of damages in his claim against Purks. During the course of the cross-examination of Dr. Troland he testified that the occurrence of the hemorrhage on the spinal cord, which necessitated a reopening of the incision, was not a common occurrence and that the unfortunate result in the instant case was an unusual one. Counsel for Powell objected to the line of questioning on the grounds that "whether it is unusual or not is immaterial in the context of this case, since under the law, as I understand the law, if the operation was rendered necessary because of the accident the responsibility lies with the present condition". The trial judge agreed.

When Dr. Troland was on re-direct examination Powell's attorney sought to establish by him the causal connection between the automobile accident, the injury his client had sustained, and the necessity for the operation performed by Dr. Troland. He asked Troland the following question and elicited the following answer:

"Q. To avoid any possible confusion on the important question, would you tell us again on the basis of your history you obtained what is the cause of the condition that required this operation to this man?

"A. This man was operated upon primarily for pain and weakness of his hand, which was the result of the nerve root pressure in his neck. From the history as obtained by me this man began to have problems at the time of the accident. That is the prime cause for the operation to be carried out."

Among the instructions given in *Powell* v. *Purks,* and again over the objection of Purks, will be found:

"If you believe from the evidence that the plaintiff exercised ordinary care in selecting a physician for treatment of the injuries he received in the collision, and that the injuries thus received were aggravated due to the treatment of such physician, the law considers that such aggravation follows as a damage naturally flowing from the original injury, and the plaintiff may recover therefor from any person legally responsible for causing the original injury."

On the question of damages the jury was instructed:

"If from the evidence and the other instructions of the Court you find your verdict in favor of the plaintiff, then in assessing damages to which he is entitled you may take into consideration any of the following which you believe from a preponderance of the evidence to have resulted from the collision.

"1. Any bodily injury sustained and extent and duration thereof;

"2. Any affect of any such injuries upon his health according to its degree and probable duration;

"3. Any physical pain and mental anguish suffered by him in the past, and any which may be reasonably expected to be suffered by him in the future;

"4. Any disfigurement or deformity resulting to him and any humiliation or embarrassment associated therewith;

"5. Any permanent disability and any inconvenience resulting therefrom;

"6. Any medical expenses incurred;

"7. Any loss of earnings in the past by reason of being unable to work at his calling;

"8. Any loss of earnings and/or lessening of earning capacity he may reasonably be expected to sustain in the future;

"And from these as proven by the evidence your verdict should be for such sum as will fully and fairly compensate the plaintiff

for damages sustained by him as a result of the collision, not to exceed the sum sued for in the motion for judgment."

The question presented here is where a plaintiff's injury is aggravated by the attending physician's alleged negligent treatment and plaintiff thereafter recovers and collects from the original tort-feasor a monetary judgment in an action where the issues of the original injury and the physician's alleged negligent aggravation thereof are tried before and submitted to the jury, may the plaintiff maintain a cause of action against the attending physician, or is such action discharged and barred by reason of the plaintiff's judgment against the original tort-feasor?

The only factual question is whether the issue of Dr. Troland's alleged negligent aggravation of Powell's original injury was tried before and submitted to the jury in the case against Purks. The trial court held that it was apparent that a full disclosure of the plaintiff's condition, his operation, the results flowing therefrom and his subsequent permanent disability were fully submitted to the jury; and that the jury was instructed that all these matters might be taken into account in fixing the damages to be awarded to the plaintiff. The record supports this finding.

We agree with the trial judge that the use of the word "aggravated", found in the instruction first above quoted, plainly gave the jury the right to consider all of the plaintiff's complaints and conditions existing at the time of trial and as projected by the expert witnesses into the future. Manifestly the word "aggravated" in the context of the instruction did not refer to injuries and conditions of plaintiff which antedated the Purks accident. It referred to treatment of the injuries that Powell received in the collision of December 9, 1966, and any aggravation of these injuries due to treatment by the physicians chosen by Powell.

We further agree with the trial court that the phrase "resulted from the collision", found in the instruction on damages, did not invite the jury to make a distinction between the portion of plaintiff's injuries that could be attributed entirely to the automobile accident and that portion which could be attributed to the operation by Dr. Troland. There was no evidence from which the jury could differentiate in measurable damages between the two. The instructions plaintiff requested, and which were granted, permitted the jury to include in the award to him compensation for all the ill

effects he suffered from the accident, and from the operation which he established was made necessary by the accident.

Plaintiff points to Rule 3:20 of the Rules of Court which provides that summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute. He says that material issues of fact are presented in the instant case, and that the acts of the defendants resulted in a separate, distinguishable and permanent injury to plaintiff aside from and in addition to the injury he sustained in the accident. He also distinguishes the giving of a voluntary release by an injured party from the effect of a release of the tort-feasor in a case in which the victim obtains a judgment.

In effect, Powell's position is that he should not be compelled to surrender his claim against Dr. Troland unless he has received full compensation for it. He concedes that where full satisfaction has been made, or where it is agreed that the amount paid under the release is accepted in full satisfaction, no claim should remain against any tort-feasor. But he further argues that these are questions of fact to be resolved by the jury.

Admittedly there is a conflict of authorities on the subject and plaintiff's contention finds support in *Daily* v. *Somberg*, 28 N. J. 372, 146 A. 2d 676 (1958); *Wheat* v. *Carter*, 79 N. H. 150, 106 A. 602 (1919); *Couillard* v. *Hospital*, 253 Minn. 418, 92 N. W. 2d 96 (1958); *Selby* v. *Kuhns*, 345 Mass. 600, 188 N. E. 2d 861 (1963); Prosser, Torts § 46 (2d ed. 1955).

The majority view is that under circumstances similar to those involved here such an action cannot be maintained. This view is stated in 41 Am. Jur. *Physicians and Surgeons* § 137, at 252 (1942) as follows:

> "At common law, a settlement by an injured person with the original tort-feasor released the attending physician from liability for an aggravation of the original injury from malpractice. And it is the general rule that there can be no recovery in a malpractice suit by one who has sustained personal injuries in consequence of a third person's negligence, against a physician for negligent aggravation of such injuries by improper treatment, after a settlement with and full release of the tort-feasor who caused the injuries, especially where the release expressly includes all claims for medical, surgical, and related expenses. As stated elsewhere in this work, an aggravation of injuries resulting from the mistake or negligence of a physician selected by the injured person to treat

his injury is regarded as part of the immediate and direct damages flowing from the original injury for which the original tort-feasor is liable."

In Annot., 40 A. L. R. 2d 1076 (1955) is found a comprehensive discussion of the subject. There it is pointed out that 22 states adhere to the majority view. We think it unnecessary to review the numerous authorities cited in the briefs filed by counsel. While the factual situation in *Corbett* v. *Clarke*, 187 Va. 222, 46 S. E. 2d 327 (1948) is different from that in the instant case, the principles enunciated there by Mr. Chief Justice Hudgins control our decision.

The plaintiff in *Corbett* complained of the negligence of a Dr. Temple who allegedly left a broken tooth root in her gum and refused to give further treatment. Mrs. Corbett then went to Dr. Clarke to have the negligent work of Dr. Temple corrected and also to have additional work done on an entirely different tooth. In doing the latter work she alleged that Clarke, after operating upon her gum, left in the incision some cotton or other foreign substance.

She effected a settlement of her claim against Temple, executed a release discharging him from all liability and dismissed her motion for judgment against him "agreed". She also brought action against Clarke, alleging gross negligence on his part. Clarke defended on the ground that the two injuries were inseparably connected and that Mrs. Corbett's release of Temple operated to discharge both dentists who, because of the connection, were joint tort-feasors.

This court said that if the injuries inflicted by Clarke and the damages flowing therefrom, as alleged in detail, were proven to be true, they would "sustain the conclusion that the damages inflicted by the several tort feasors are distinctive". We further observed that the consideration stated in the release executed by Mrs. Corbett to Temple was only $225 and was said to be a consideration for the injuries inflicted upon plaintiff by the original wrongdoer, and that "Dr. Clarke had no connection, either contractual or otherwise, with the original tort feasors". We concluded that under the circumstances of that case the release of the original wrongdoer should not affect plaintiff's right to recover damages for specific injuries which she alleged were inflicted upon her as a result of the gross negligence of Clarke. These being matters of proof, we held that the plaintiff was entitled to an opportunity to prove her allegations.

Numerous authorities were cited and reviewed by Mr. Chief Jus-

tice Hudgins in the opinion, and during the course thereof it was said:

> "The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury. A settlement with the original *tort feasor* operates as a release of the negligent physician. [Citations omitted.]
>
> "This rule is based on the theory that the aggravation of the injury by the negligent treatment of the physician is a result that might reasonably have been anticipated. This theory embraces the much discussed question of what is 'proximate cause.' " 187 Va. at 224-25, 46 S. E. 2d at 328.

The distinctions between *Corbett* and the case under review are obvious. In *Corbett* the plaintiff filed suit against Temple, the first tort-feasor, without knowledge of the existence of the alleged second tort by Clarke. She filed her second and independent action against Clarke before taking any action in the suit against Temple. She executed a release and dismissed her suit against Temple, an act of her own volition, and one which leads to an inquiry into her intent. In the instant case Powell tried his action at law with full knowledge of the operation by Dr. Troland, his alleged negligence and its consequences, and he claimed serious and permanent damages. He went to trial against Purks, the first tort-feasor, proved Purks' negligence, the injury that plaintiff sustained, the treatment and operations that he received and had the jury instructed that such items of damages could be considered by them in reaching their verdict. He recovered a judgment which upon its becoming final, was paid and marked satisfied. As the trial judge held, there was neither ignorance by Powell of the alleged second tort of Troland, nor the separability of Troland's negligence from Purks' negligence. In *Corbett* both of these factors existed.

In *Fletcher* v. *Hand*, 358 F. 2d 549, (D. C. Cir. 1966) the court applied Virginia law and specifically followed *Corbett* v. *Clarke*, *supra*. Mrs. Fletcher sued Dr. Hand for negligent treatment which allegedly aggravated a previously incurred accidental injury. She alleged that she seriously injured her left knee when she fell over a negligently placed magazine rack in her daughter's home. She sued

her daughter in a Virginia state court seeking damages suffered as a result of the fall. During the pendency of this law suit Mrs. Fletcher suffered a second fall in which she sustained a broken hip. Dr. Hand treated her for both the knee and the hip injuries. As an item of damages in her suit against her daughter Mrs. Fletcher claimed that her ultimate permanent injury, including the defective hip, and medical expenses incident thereto, had resulted from the weakness and the instability of her left knee. Dr. Hand gave a written opinion that Mrs. Fletcher had suffered a 50% partial disability of her entire lower left extremity as the result of the two falls which occurred 18 months apart.

Mrs. Fletcher settled her claim against her daughter and thereafter filed a malpractice action against Dr. Hand for his alleged negligence in treating the broken hip. The district court dismissed the claim against Dr. Hand upon the ground that the plaintiff had released that claim when she settled with the original tort-feasor, her daughter. In affirming, the Circuit Court of Appeals for the District of Columbia said:

"Appellee's theory in tendering the release as a complete defense can be articulated in this wise: Virginia follows the rule 'that where one has received a personal injury as a result of the negligence of another and pursues due care in the selection of a physician or surgeon to treat the injuries and they are aggravated by the negligent treatment of such physician or surgeon, the person causing the original injury is liable for the resulting damage to the full extent.' *Fauver* v. *Bell*, 192 Va. 518, 65 S. E. 2d 575, 578 (1951). It is equally well settled that 'the release of one joint tort-feasor releases the other jointly liable for the same wrong or injury.' *Lackey* v. *Brooks*, 204 Va. 428, 132 S. E. 2d 461, 464 (1963). To the extent that the original tort-feasor is accountable for the damage caused by medical negligence in the treatment of the injuries caused by him, he stands in the relationship of a joint tort-feasor to the offending physician; and a release to the former discharges the latter. Translated into the terms of this case, if the daughter's liability extended to the hip fracture, it must be taken to have included aggravating damage caused by negligent medical treatment of that fracture; and a release of the daughter operated to extinguish appellee's liability for any damage for which the daughter could have been made to respond.

"The case of *Corbett* v. *Clarke*, upon which both parties rely,

is the Virginia case nearest on its facts to this, and appears to be the only authoritative detailed discussion of how Virginia law operates in this situation." 358 F. 2d at 551-52.

The following paragraph from *Fletcher* v. *Hand, supra,* is particularly applicable to the instant case:

"Unlike the Virginia court in *Corbett,* we see no need to send this case back for a determination of whether the knee injury and the hip fracture were so causally related as to render appellant's daughter liable for the damages caused by medical negligence in the treatment of the latter. The record made at the hearing establishes an affirmative assertion by appellant herself of such a connection, made under circumstances which preclude a denial of that connection now. She clearly claimed such a relationship in her Virginia suit against her daughter, and her release of that claim is surely as broad as the claim itself. The hip fracture may or may not have been, in fact or in law, a foreseeable consequence of the daughter's initial neglect to which the daughter's liability extended. But appellant has so represented it in her Virginia suit, and the release settling that suit must be construed in the light of that representation." 358 F. 2d at 552-53.

In *Powell* v. *Purks* the plaintiff proved the entire consequences of both the automobile accident and the subsequent medical treatment including Dr. Troland's neurological operation. The trial court found that it was obvious from its verdict that the jury took the whole picture into account in arriving at the award. We concur in this holding.

The plaintiff has accepted $40,000 and caused to be marked "fully satisfied" the judgment that he recovered in his action for damages sustained as the result of the negligence of Purks.

It is well settled that where there has been an acceptance of satisfaction of a judgment recovered it has the same effect as a release. It operates to extinguish a plaintiff's cause of action against other joint tort-feasors liable for the same injury, and bars an action against them though the wrongdoers are severally rather than jointly liable for the injury. Annot., 27 A. L. R. 805 (1923). *See McLaughlin* v. *Siegel,* 166 Va. 374, 381, 185 S. E. 873; 875 (1936); *Dickenson* v. *Tabb,* 208 Va. 184, 194, 156 S. E. 2d 795, 802 (1967).

The judgment of the lower court is

*Affirmed.*