# Richmond

## Glenavie Fowler Washington, Etc. v. Gaylord S. Williams, Et Al.

December 2, 1974.

Record No. 731015.

Present, All the Justices.

*S. W. Tucker (William H. Bass, III; Hill, Tucker & Marsh*, on brief), for plaintiff in error.

*Edward R. Slaughter, Jr.; Brian J. Donato (David Craig Landin; Robert E. Taylor; McGuire, Woods & Battle; Taylor, Michie & Callaghan*, on briefs), for defendants in error.

Carrico, J., delivered the opinion of the court.

The principal question in this medical malpractice case is whether release of the original tort-feasor whose alleged negligence caused injury to the plaintiff's jaw and knee also operated to release the defendant-physicians whose alleged

negligence resulted in amputation of the plaintiff's previously uninjured left forearm. The trial court held that the physicians had been so released and consequently dismissed the plaintiff's malpractice action.

The record shows that on April 5, 1969, the plaintiff, Glenavie Fowler Washington, then Glenavie L. Fowler, was riding in an automobile when it collided with a truck operated by Charlie Smith. In the accident, the plaintiff's jaw and left knee cap were fractured. She was hospitalized at the University of Virginia Hospital in Charlottesville, where treatment of her injuries included "wiring the jaw." On May 28, 1969, preparatory to removal of the wiring, a preoperative medication was injected into the plaintiff's left arm. Following the injection, the plaintiff's left hand became gangrenous and her forearm was amputated on July 10, 1969.

On November 11, 1970, the plaintiff filed the present malpractice action seeking recovery from the defendant-physicians, Gaylord S. Williams and Jerry W. Bains, for their alleged negligence in causing the loss of her arm. Then, on January 19, 1971, the plaintiff filed an action against Charlie Smith alleging that his negligence had caused the automobile accident in which she originally was injured. In the latter action, the plaintiff sought recovery from Smith not only for the injuries sustained directly in the accident but also for the loss of her left forearm. Smith was liable, the plaintiff alleged, for the negligence of the physicians in treating her injuries.

On December 20, 1972, the plaintiff was permitted by court order to amend her motion for judgment filed against Smith by deleting therefrom all allegations relating to the loss of her arm and the negligence of the treating physicians. On January 8, 1973, the plaintiff executed a release which recited that for $9,250.00 she released Smith "from any and all rights of action, claims and demands . . . for any and all injury . . . sustained" in the automobile accident of April 5, 1969. On January 17, 1973, an order was entered dismissing the action brought by the plaintiff against Smith and reciting that "all matters in controversy" in the Smith action had been "compromised and settled."

Thereafter, the defendant-physicians filed special pleas of release in the malpractice action. The pleas alleged that the plaintiff had proceeded against Smith on the theory he was a joint tort-feasor with the physicians and that the subsequent

release of Smith had also released the physicians. The trial court ruled, as a matter of law, that the release of Smith acted as a release of the defendant-physicians. The pleas of release were sustained, and the plaintiff's action was dismissed.

To sustain the trial court's ruling, the defendant-physicians principally rely upon our decision in *Powell* v. *Troland,* 212 Va. 205, 183 S.E.2d 184 (1971), a medical malpractice case. There, Powell had been injured in an automobile accident with Purks. Powell's injuries were aggravated by the negligent treatment of his physician, Dr. Troland. In an earlier action, Powell had recovered a judgment against Purks not only for the injuries sustained in the accident but also for the aggravation caused by Dr. Troland. The judgment was satisfied. In Powell's malpractice action against Dr. Troland, the trial court sustained the doctor's plea of release and dismissed the action. We affirmed, holding that Dr. Troland had been released by Powell's acceptance of satisfaction of the judgment against Purks, the original tort-feasor.

It is true, as the present defendant-physicians point out, that in *Powell* we referred to the original wrongdoer and the negligent treating physician as joint tort-feasors. We also reiterated the rule that release of one of several joint tort-feasors operates to release all. But our reference to joint tort-feasors and our statement of the rule of "release one, release all" had application only to the question at hand in *Powell*: whether the release of the original tort-feasor also released the treating physician whose negligence *aggravated* the initial injury.

In the narrow context of *aggravation* — and then only to the extent of analyzing the effect of the release of the original tort-feasor — we treated the two wrongdoers in *Powell* as joint tort-feasors. Such treatment is inappropriate, however, where it is claimed, as the present plaintiff claims, that the negligence of a physician has caused not an aggravation but a separate and distinct injury. This holds true with respect to the present case despite the fact that when the plaintiff first proceeded against Smith, the original tort-feasor, she alleged he was liable for the physicians' negligent treatment of her injuries. She had withdrawn the allegation by the time she settled with Smith, and the defendant-physicians are not entitled to rely upon it.

We also said in *Powell* that the rule of "release one, release

all" applied whether "the wrongdoers are severally rather than jointly liable for the injury." But this application of the rule must be viewed in light of the factual context in which *Powell* was decided, *viz.*, the injured party had received full satisfaction for all his injuries, both the initial injury and its aggravation by his physician. An injured party is entitled to one and only one full satisfaction. *Katzenberger* v. *Bryan*, 206 Va. 78, 85, 141 S.E.2d 671, 676 (1965). Powell's case was, therefore, subject to the rule that if an injured party receives full satisfaction, or if he agrees to accept a certain amount as full satisfaction, the release of one tort-feasor operates to release all other wrongdoers allegedly liable for the injury, whether their liability is several or joint. Recognition of the "full satisfaction" rule is all that was intended by the reference to several rather than joint liability. So limited, *Powell* does not operate to bar, as a matter of law, the present malpractice action when it does not appear, as a matter of fact, that the liability of the alleged tort-feasors is joint or, if several, that the plaintiff has received full satisfaction or has agreed to accept a certain amount as full satisfaction.

The defendant-physicians also rely upon our decision in *Corbett* v. *Clarke*, 187 Va. 222, 46 S.E.2d 327 (1948). As we shall demonstrate, however, the case militates not in favor of the defendant-physicians but against them.

*Corbett* was a medical malpractice case involving the negligent acts of two dentists. The first dentist, in extracting one of Mrs. Corbett's teeth, failed to remove the root. Mrs. Corbett then engaged the second dentist, who removed the root previously left in her gum. He also extracted another tooth, but neglected to remove and later failed to discover some absorbent cotton he had placed in the socket. Mrs. Corbett settled her claim against the first dentist and gave him a release for the injuries he had inflicted. In the malpractice action against the second dentist, the trial court sustained his plea of release and dismissed the action. We reversed, holding that whether the action was barred by the earlier release depended upon whether the injuries caused by the two dentists were inseverable, as the second dentist claimed, or were separate and distinct, as Mrs. Corbett alleged. These, we said, were matters of proof, and we remanded the case to give Mrs. Corbett an opportunity to prove her allegations.

*Corbett* enunciated several principles important to the decision here: "[I]f an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the *aggravation* of the injury resulting from the negligent act of the physician as a part of the immediate and direct damages which naturally flow from the original injury." *Corbett, supra,* 187 Va. at 224-25, 46 S.E.2d at 328 (emphasis added). "This rule is based on the theory that the *aggravation* of the injury by the negligent treatment of the physician is a result that might reasonably have been anticipated. This theory embraces the much discussed question of what is 'proximate cause.' " 187 Va. at 225, 46 S.E.2d at 328 (emphasis added). "[It] would strain the usual and normal concept of 'proximate cause' to the breaking point" to hold that a "separate and distinct" tort by a treating physician is no more "than the aggravation of the original injury." 187 Va. at 226, 46 S.E.2d at 329. While release of the original tort-feasor also operates to release the treating physician for *aggravation* of the injury, such release is not effective where the physician's acts constitute "separate and distinct wrongs;" otherwise, the injured party would remain uncompensated for the specific injuries caused by the physician. 187 Va. at 225, 230, 46 S.E.2d at 328, 330.

From *Powell* and *Corbett,* several conclusions may be drawn. (1) If the negligent acts of a treating physician result in mere aggravation of an injury, release of the original tort-feasor operates to release the physician. (2) If the negligent acts of the physician result in a separate and distinct injury, such release does not operate to release the physician unless the injured party has received full satisfaction or has agreed to accept a certain amount as full satisfaction. (3) Whether the physician's negligent acts cause a mere aggravation of the original injury or cause instead a separate and distinct injury should, as a general rule, be left to the determination of a jury, guided by ordinary principles of proximate cause. (4) Whether the injured party, if he suffers a separate and distinct injury, has received full satisfaction or has agreed to accept a certain amount as full satisfaction is also, generally, a jury question. (5) The court should make a determination as a matter of law only if reasonable minds would not differ upon the meaning of facts necessary to reach a legal conclusion.

In the present case, we believe a typical jury issue was presented upon the question whether the loss of the plaintiff's arm was, as she claims, a separate and distinct injury or, as the defendant-physicians claim, merely an aggravation of her original injury. And, if the loss of the plaintiff's arm was a separate and distinct injury, it was also a jury question whether her settlement with Charlie Smith, the original tort-feasor, included or was accepted in satisfaction of her claim of damages for the loss of her arm. We conclude, therefore, that the trial court erred in holding, as a matter of law, that the plaintiff's action against the defendant-physicians was barred by the release of Smith.

Accordingly, we will remand the case for a factual determination of the issues raised by the defendant-physicians' pleas of release. In view of the remand, we must now consider the plaintiff's complaint that the trial court erred in refusing a number of her requests for admission.

The only justification advanced by the defendant-physicians for the trial court's refusal is that the answers called for by the requests were not relevant to a determination of the pleas of release. That determination, however, was made as a matter of law. Now that the issues concerning the pleas of release, and perhaps the merits of the plaintiff's claim, are to be determined upon a factual basis, the refused requests may be both relevant and proper. The trial court should, therefore, if the plaintiff so moves, reconsider its refusal of the requests in light of the new situation presented by the remand.

For the foregoing reasons, the judgment of the trial court will be reversed and the case remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*