## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Canterbury Associates, Ltd.

v.

Robert E. McLaughlin
and Bruce Schirmer

January 14, 1992

Case No. (Law) 4700

BY JUDGE JAY T. SWETT

The plaintiff, Canterbury Distributors, Ltd. (hereafter "Canterbury"), has sued Drs. Robert McLaughlin and Bruce Schirmer seeking reimbursement for substantial damages paid by Canterbury in settling a personal injury suit brought by Mrs. Rosamond Payne. Canterbury employed the driver of a vehicle which struck Mrs. Payne's vehicle resulting in her admission to the University of Virginia Hospital. In this action, Canterbury admits that its employee negligently caused the accident and resulting injuries to Mrs. Payne but contends that her injuries were aggravated while a patient at the University of Virginia Hospital and that the aggravation was due to the negligence of Dr. McLaughlin and Dr. Schirmer. Canterbury settled Mrs. Payne's claim for $1,300,000.00 and seeks to recover all or a portion of that amount from Drs. McLaughlin and Schirmer under the alternative theories of contribution and common law indemnity.

In addition to filing a grounds of defense, the defendant doctors have demurred to both counts. By way of affirmative defenses and a

plea in bar, they also seek dismissal of the contribution claim on grounds of judicial estoppel and that contribution is not available since the defendant doctors and Canterbury were not joint tortfeasors in the context of the injuries to Mrs. Payne. The defendants also assert that the claims of indemnity and contribution are barred by the "rule of *Massie v. Firmstone.*"

### Facts

At this stage of the proceedings, the facts will be viewed in the light most favorable to the plaintiff and taken from its motion for judgment. They show that Mrs. Payne was injured on September 1, 1987, in an automobile accident involving a vehicle operated by an employee of Canterbury. Mrs. Payne was immediately taken to and admitted to the University of Virginia Hospital. In the course of treatment for the accident-related injuries, Mrs. Payne experienced a reoccurrence of pre-existing bleeding diverticulosis. Dr. McLaughlin was Mrs. Payne's physician and treated her accident-related injuries. When the diverticulitis was diagnosed, Dr. Schirmer was called in to treat Mrs. Payne for the diverticulitis. He continued to treat her until April, 1989.

Canterbury contends that Dr. McLaughlin, who treated Mrs. Payne mainly between September 1 and September 20, 1987, was negligent by not being aware of her pre-existing diverticulitis, and, that when he did become aware of it, he was negligent in treating the condition. Canterbury contends that Dr. Schirmer was negligent in the manner he treated Mrs. Payne's condition, including but not limited to three negligently performed surgical procedures, one on September 20, 1987, another on November 10, 1987, and a third on February 10, 1988.

Canterbury concedes that its driver was negligent in causing the September 1, 1987, accident and the resulting injuries to Mrs. Payne. However, it contends that the negligent treatment of Mrs. Payne by Dr. Schirmer and Dr. McLaughlin caused Mrs. Payne to suffer substantial additional injuries over and above those that Mrs. Payne received in the accident. When Mrs. Payne filed suit against Canterbury to recover from her injuries arising out of the accident, Mrs. Payne sued for all of her injuries and damages, including those experienced in the course of her treatment at the University of Virginia Hospital. After the suit was filed, Canterbury made demand

on the doctors to contribute to a settlement of Mrs. Payne's claim against Canterbury. The doctors declined to do so. On August 22, 1990, Canterbury entered into a settlement agreement with Mrs. Payne, the value of which was $1.3 million dollars. In the settlement, Mrs. Payne acknowledged that the payment she received was for all injuries and damages arising out of the accident, including those arising out of the care provided to her at the University of Virginia Hospital by Dr. McLaughlin and Dr. Schirmer.

The settlement agreement contained the following paragraph regarding Canterbury's payment to Mrs. Payne and its intention to pursue its "rights" against the doctors who treated her.

> The plaintiff acknowledges and agrees that this release and discharge does not prejudice in any way the Defendant's or the Insurer's rights under *inter alia*, the common law and Va. Code § 8.01–34 and § 8.01–35.1 to seek indemnity and/or contribution for payments set forth in Section II from any health care provider who rendered, consulted about, or was responsible for medical treatment to the Plaintiff from September 1, 1987, up to and including the present date, including without limitation Dr. Bruce D. Schirmer, Dr. Robert E. McLaughlin, the University of Virginia Hospital, or from any other person or entity.

### Demurrer to Claim of Common Law Indemnity

In Paragraph 29 of its motion for judgment, Canterbury asserts that the negligence of Drs. Schirmer and McLaughlin was "independent, separate and distinct" from the negligence of Canterbury's driver and that the "additional injuries and losses" experienced by Mrs. Payne as a result of the negligence of the doctors was "separate and distinct from the injuries and losses resulting from the automobile accident." Canterbury contends that the separate negligence of the doctors "enlarged" the amount Canterbury had to pay to settle Mrs. Payne's case. Canterbury's claim for indemnity is based on the assertion that Canterbury's payment to Mrs. Payne was for claims that were the "sole fault" of the doctors and not the fault of Canterbury. Canterbury's settlement, therefore, "unjustly enrich[ed]" the doctors such that Canterbury should be indemnified for the damages attributable to defendants' negligence as well as for a proportionate share of attorney fees and costs incurred by Canterbury in defending and settling Mrs. Payne's suit.

Virginia has not previously addressed the question of whether or not an initial tortfeasor may recover, either by way of indemnity or contribution, for damages for which the original tortfeasor is responsible, but which are the result of the negligence of a physician treating the victim of the tortfeasor's negligent conduct.[1] Canterbury relies on cases from other jurisdictions which purport to permit the initial wrongdoer to recover for those injuries for which it is able to prove were caused by subsequent negligent medical treatment. In some cases, recovery was permitted under a theory of implied indemnity based upon the equitable principle that those who cause injury should bear a proportionate share of the damages which can be proven to be attributable to the subsequent medical care.

In Virginia, a claim for indemnity is one that is in the nature of a contractual claim. *Vepco v. Wilson*, 221 Va. 979, 981-982 (1981); *Sykes v. Stone and Webster Engineering Corp.*, 186 Va. 116, 128-129 (1947). A right to indemnity is not limited to a right to recover under an express contractual indemnification clause. Thus, an employer may seek indemnification from its employee where the employer's liability was vicarious based on the master-servant relationship, which itself is in the nature of a contractual relationship. *McLaughlin v. Siegel*, 166 Va. 374, 377 (1936).

Indemnification as a basis for recovery by one tortfeasor against another tortfeasor was an issue in *Philip Morris, Inc. v. Emerson*, 235 Va. 380 (1988). In *Philip Morris*, a number of persons were injured when they were exposed to pentaborane, a highly toxic substance. Canisters of pentaborane were buried by Texaco. Philip Morris later acquired from Texaco the property on which it had buried the toxic material. When Philip Morris discovered the pentaborane, it sought to dispose of it. In doing so, a quantity was released causing several injuries and deaths. Texaco, Philip Morris, and others were named as defendants in multiple actions. Texaco and Philip Morris filed cross claims against each other and the other defendants seeking indemnification. On appeal, the Supreme Court rejected the claims for indemnification based on the fact that both

---

[1] Virginia follows the principle that an initial wrongdoer is liable not only for the immediate injuries caused by the negligent conduct, but also for any aggravation of the injuries incurred by the victim in the course of negligent medical treatment so long as the victim uses ordinary care in obtaining medical treatment for the original injury. Corbett v. Clarke, 187 Va. 222, 224-225 (1948).

Texaco and Philip Morris were actively negligent, and the trial showed that their active negligence contributed to cause the injuries and deaths. "If a defendant is guilty of active negligence, he may not obtain indemnification from any other defendant." 235 Va. at 411.

Here, the defendant doctors assert that *Philip Morris* disposes of the plaintiff's indemnity claim since the claims against Canterbury's driver and the doctors are claims of active negligence. While that is true, that does not necessarily resolve the issue. There is a difference in the nature of the injuries here from those suffered by the victims in *Philip Morris*. There the victims suffered a single injury or wrong. Thus, while the conduct of the several defendants in *Philip Morris* was different, it all combined or concurred to produce the same injury or death. Here, while the negligence of Canterbury's driver and the alleged negligence of defendant doctors is different, the injuries are also different. In fact, the essence of Canterbury's indemnity claim is that the injuries caused by Canterbury's driver were separate and distinct from the injuries caused by the alleged doctors' malpractice.

Nevertheless, this court feels bound by the principles stated in the *Philip Morris, Inc. v. Emerson* decision. The focus there was on the nature of the conduct of the defendants. So long as the claims against the several defendants were claims of active negligence, indemnification was unavailable as a remedy to apportion or transfer responsibility for the injuries. While there is substantial merit to Canterbury's argument that apportionment, whether it is called implied indemnity or equitable indemnity, would be a fair resolution in a case where a negligent doctor has enhanced the injuries caused by the original wrongdoer, that is not the rule in Virginia. Such a significant step should be one for the legislature or for the Supreme Court of Virginia.

Accordingly, the defendants' demurrer to the plaintiff's claim for indemnity is sustained.

### Demurrer to Claim of Contribution

Count II of plaintiff's motion for judgment contends that the negligence of Canterbury and the negligence of the doctors "concurred to cause the injuries and losses" of Mrs. Payne and that Canterbury settled those claims with Mrs. Payne. In Count II, the plaintiff seeks to recover from the doctor defendants one-half the amount Canter-

bury paid to Mrs. Payne. In its brief in opposition to defendants' demurrer on the contribution claim, the plaintiff contends it should be permitted to show that the negligence of the plaintiff and the negligence of the doctors jointly contributed to cause one injury to Mrs. Payne such that it is entitled to contribution under Va. Code § 8.01–34.[2]

In Virginia, a claim for contribution by one wrongdoer against another is expressly permitted by statute. Prior to the enactment of Va. Code § 8.01–34, contribution among joint tortfeasors was not permitted. *Belt Line Railroad v. Parker*, 152 Va. 484, 505 (1929). Although a statutory remedy, the doctrine of contribution is based upon the equitable doctrine that if two or more wrongdoers contribute to cause a wrong, then the resulting burden should be borne equally by all wrongdoers. *Hudgins v. Jones*, 205 Va. 495, 501 (1964).

The applicable statute is short and to the point. Va. Code § 8.01–34 provides that "contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude." In construing the statute, "wrongdoers" has been interpreted to mean joint tortfeasors. However, as plaintiff correctly argues, "wrongdoers" or "joint tortfeasors" does not necessarily refer to persons whose conduct occurs simultaneously such as in the case of a two vehicular accident where both drivers are negligent. Contribution is permitted between wrongdoers where the wrongdoers' conduct is separate and distinct and occurs at a different time such as in the case of *Dickenson v. Tabb*, 208 Va. 184 (1967). There, one automobile driver negligently caused a collision that blocked a highway. Another automobile driver came upon the scene of the accident and struck one of the vehicles that had been involved in the earlier collision. Although the conduct of the two drivers occurred at different

---

[2] Plaintiff concedes that claiming in Count II that the injuries to Mrs. Payne constituted a single injury is inconsistent with its claim for indemnification in Count I which rests upon an assertion that the injuries caused by the doctors were separate and distinct from the injuries caused by Canterbury's driver. Plaintiff argues that pleading facts in the alternative is permitted and that the ultimate issue of whether the injuries were the same or were separate and distinct should be for the jury to determine. For purposes of the demurrer, the court accepts plaintiff's argument that it may plead in the alternative. See Va. Code Section 8.01–281(A) and Rule 1:4(k).

times, the Court found that they were joint tortfeasors because the conduct concurred to produce the injuries suffered by the plaintiff, a passenger in one of the vehicles involved in the first accident.[3] Therefore, contrary to the defendants' argument, the fact that the conduct of Canterbury's driver and the conduct of the two doctors occurred at different times or even in different locations is not, in and of itself, grounds to dismiss plaintiff's claim for contribution.

In support of its argument to permit contribution against the two doctors who treated Mrs. Payne after the accident, plaintiff relies on two medical malpractice cases. The cases are *Corbett v. Clarke*, 187 Va. 222 (1948), and *Washington v. Williams*, 215 Va. 353 (1974). Canterbury argues that those cases require that it be permitted to have a jury decide whether the injuries to Mrs. Payne are "separate and distinct" or are "a single indivisible injury" and, if the jury concludes the latter, allow contribution based on the doctors' negligent medical care.

In *Corbett*, the plaintiff suffered an injury while being treated by a dentist. The patient then sought treatment from another dentist for the injuries. The second dentist caused further injuries to the patient. The patient then settled with the first dentist and gave him a release. He brought suit against the second dentist who moved to dismiss the case based upon the release of the first dentist. The dentist argued that any injuries that he may have inflicted on the patient were inseparable from the injuries caused by the first dentist and, since the two dentists were joint tortfeasors, the release of the first dentist operated to release him. In opposing the defendant's plea of release, the patient argued that the injuries he received from the second dentist were separate and distinct and he should be permitted to recover for the separate negligently inflicted injury.

In *Washington v. Williams*, a case similar to this case, a woman was involved in an automobile accident and suffered injuries to her jaw and knee. She was hospitalized at the University of Virginia Hospital. During the course of treatment for the injuries to her jaw, she received an injection in her arm which subsequently caused gangrene in her hand requiring amputation. The woman filed a medical

---

[3] Although our Supreme Court in Dickenson v. Tabb applied West Virginia law, the case would have been decided the same under Virginia law as indicated by the number of Virginia cases cited in the opinion.

malpractice action against the treating physician for causing the loss of her arm. She also filed a separate action against the driver of the truck involved in the original accident. In this latter action, she sought damages for injuries received in the accident, as well as for damages caused during the course of her medical treatment, including the loss of her arm. She then reached an agreement to settle her claim against the truck driver. Prior to executing a release as part of the settlement, she amended her suit against the truck driver eliminating all claims for injuries which occurred during the course of her hospitalization and that were pending in the malpractice action. Following the settlement, the defendant doctor in the malpractice action sought a dismissal of the suit based upon the release of the original tortfeasor.[4] In rejecting the plea of release, the Supreme Court held that the patient could pursue the malpractice claim against the doctor if the plaintiff could prove that she had suffered a separate and distinct injury at the hands of the treating doctor. 215 Va. at 357. The Court held that it was for the jury to decide whether the injury to the arm was a separate and distinct injury as opposed to an aggravation of her original injury. If the jury found the former, then the doctor could be liable. If the jury found on the latter, then her release of the truck driver barred her claim against the doctor.

In *Corbett* and *Washington*, the issue involved was whether one who is injured by one wrongdoer has, by operation of the law of release, given up a claim against a second wrongdoer where the injuries are related to one another. What was at issue was the scope of the plaintiff's rights *vis-a-vis* one wrongdoer who caused the original injury and a subsequent wrongdoer who, in the course of treating the victim's injuries, caused further injury.

Those principles are not applicable here. Those cases did not involve actions for contribution between wrongdoers. Those cases involved the scope of a plaintiff's rights to recover for injuries caused by negligent medical treatment when the plaintiff has received compensation and settled with the wrongdoer who caused the person to seek medical treatment. While the determination of what rights a plaintiff has in those situations may deal with the question of

---

[4] This case was decided before the enactment of Va. Code Section 8.01–35.1 which permits settlement of claims against one tortfeasor without releasing claims against all tortfeasors.

whether an injury is separate and distinct as opposed to an aggravation of an original injury, that focus is different from the one here.

An action for contribution rests upon the premise that wrongdoers who contribute to cause a single injury to one person may seek recovery from the other if one wrongdoer pays compensation for an injury caused by several. Contribution among wrongdoers is based upon the premise that their conduct or the circumstances surrounding their conduct caused to contribute a single injury. *Hudgins v. Jones, supra.*

Moreover, an action for contribution is based upon the premise that a contribution defendant is not liable to a contribution plaintiff unless the injured party who received compensation from the contribution plaintiff could have recovered against the contribution defendant. *Bartlett v. Recapping, Inc.,* 207 Va. 789 (1967).

Applying these principles here, this Court concludes that contribution is not available to Canterbury. Under the facts pled here, Mrs. Payne received injuries as a result of an automobile accident on September 1, 1987. In the course of treatment for those injuries, she suffered a reoccurrence of diverticular bleeding. She then received treatment for the diverticular bleeding which she contends to have been negligent. While Mrs. Payne could have recovered from Canterbury's driver for both the original automobile accident injuries and the subsequent negligent treatment of the diverticulosis, it does not mean that Canterbury's driver and the doctors who treated her were joint tortfeasors who produced a single indivisible injury. In other words, simply because Mrs. Payne could have recovered from Canterbury all of her injuries received both in the accident and during her hospitalization, it does not necessarily mean that Canterbury can seek contribution from the doctors who subsequently treated Mrs. Payne. This case does not involve the nature or scope of Mrs. Payne's claim against the doctors for malpractice. If it did, then the issue of whether her hospital-related injuries were separate and distinct or were an aggravation of injuries received in the accident might be important. However, at issue here are the rights between two wrongdoers. Unless their conduct joins to produce a single indivisible injury, contribution is not available. Under the facts here, while Canterbury alleges and might be able to prove that negligent treatment of Mrs. Payne's diverticulitis was related to and an aggravation of the accident-related injuries as opposed to a separate and

distinct injury, doing so would not be sufficient to sustain a claim of contribution.

Accordingly, the demurrer as to the claim for contribution is granted.[5]

### Defendants' Remaining Pleas
### Based Upon Judicial Estoppel
### and Massie v. Firmstone

While the court has granted the defendants' demurrer as to the plaintiff's claims for indemnification and contribution, the Court will rule on the remaining defendants' pleas based on the assumption that this case will be appealed.

The essence of the defendants' claim that this action should be dismissed on the principle of judicial estoppel is that Canterbury defended the original suit brought by Mrs. Payne by arguing that all injuries that occurred after September 20, 1987, were unrelated to the September 1, 1987, accident, and that neither Dr. McLaughlin nor Dr. Schirmer were negligent in providing treatment to Mrs. Payne. It is also pointed out that Mrs. Payne never made a claim against Drs. McLaughlin and Schirmer and, during the course of her litigation against Canterbury, "affirmatively took the position that the defendant physicians were not negligent." Further, the doctors point out that in defending the claim brought by Mrs. Payne, expert medical witnesses testified on behalf of Canterbury that there was no causation between the automobile accident and most of the medical care received by Mrs. Payne. The doctors argue there that once Canterbury took this position, it cannot do a complete reversal in this suit and claim that the doctors were joint tortfeasors and liable in contribution or indemnity for all the injuries to Mrs. Payne and which Canterbury has settled.

Without reviewing the significant number of pleadings and deposition testimony relied on by the doctors to prove their claim, this Court is satisfied that Canterbury's defense of Mrs. Payne's original

---

[5] For reasons not clear to this Court, the parties did not address the issue of the applicability of Va. Code Section 8.01–35.1(B). That section provides that one tortfeasor who settles with a claimant may not recover by way of contribution from another tortfeasor who is liable for the same injury and whose liability is not extinguished by the release. However, since that issue was not raised, it will not be addressed by this Court.

suit was replete with claims, statements, and positions disclaiming negligence on the part of Drs. McLaughlin and Schirmer.

Having considered the arguments, this court concludes that Canterbury's claim would not be barred by the doctrine of judicial estoppel. While Canterbury concedes that its position here is inconsistent with its position taken in its defense of the suit brought by Mrs. Payne, it argues correctly, this Court believes, that such inconsistent positions are not, as a matter of law, a complete bar to proceed with this suit. Neither Dr. McLaughlin nor Dr. Schirmer were parties to the original suit brought by Mrs. Payne against Canterbury. It will be presumed by this Court that Canterbury acted in good faith and presented a defense to the suit brought by Mrs. Payne that was justified based upon a view of the available evidence. It is presumed that its defense tactics were chosen in the context of what it concluded to be in its best interests. That litigation has been concluded. While Canterbury has reversed its position in the litigation, that alone should not, in this Court's view, preclude it from proceeding against Drs. McLaughlin and Schirmer under the doctrine of judicial estoppel. Accordingly, this Court would not grant the special plea based on judicial estoppel.

The same applies to the special plea based upon the case of *Massie v. Firmstone*, 134 Va. 450 (1922). While the Supreme Court's decision in *Pierce v. Martin*, 230 Va. 94 (1985), appears to support the defendant's position, that case is distinguishable. At issue in *Massie v. Firmstone* and *Pierce v. Martin* is the effect of clear unequivocal statements of fact which are determinative of liability between litigants or potential litigants. In contrast to those cases, here the defendant doctors have pointed to numerous incidents where Canterbury and its expert witnesses have taken positions during the defense of its suit brought by Payne that are inconsistent with Canterbury's position here. However, such opinions and testimony by medical witnesses is not the same as testimony as to unequivocal facts of the type present in *Pierce v. Martin* or *Massie v. Firmstone*.

For these reasons, the Court denies the pleas of the defendant doctors that the plaintiff's claim should be dismissed either based on the judicial estoppel or plea of the application of the doctrine as announced in *Massie v. Firmstone*.

The Court sustains the demurrers to the claims for indemnification and contribution.